238 S.W.2d 886 (1951)
SHAPIRO
v.
SHAPIRO.
No. 28022.
St. Louis Court of Appeals, Missouri.
April 17, 1951.
Motion for Rehearing or for Transfer to Denied May 18, 1951.
*887 Max Sigoloff, St. Louis, for appellant.
Raymond I. Harris, St. Louis, for respondent.
Motion for Rehearing or for Transfer to Court Denied May 18, 1951.
McCULLEN, Judge.
This is an appeal by Julia Shapiro from an order of the Circuit Court of the City of St. Louis sustaining a motion filed by her former husband Irving I. Shapiro in which he requested a modification of a divorce decree which had been rendered in favor of Julia Shapiro against him on April 30, 1947, in the same Circuit Court. In said decree the wife had been given the custody of Rochelle Lee Shapiro, the minor child of said parties, and had been allowed $20.00 per week for the support of said child and $15.00 per week as alimony for the support of the wife in accordance with a stipulation of the parties filed in the divorce action.
In his motion to modify, which was filed on January 13, 1950, Irving I. Shapiro, hereinafter referred to as defendant, after stating that Julia Shapiro, hereinafter referred to as plaintiff, had been awarded $15.00 per week as alimony and $20.00 per week for support of the minor child, alleged that his financial condition had been so altered that he was no longer able to pay the total sum of $35.00 per week; that "his financial condition and present income is so that he has been and is forced to continually borrow money in order to keep up to date the said payments"; that "the said sums of Twenty Dollars ($20.00) and Fifteen Dollars ($15.00) per week respectively are excessive and are not required by the said Julia Shapiro and Rochelle Lee Shapiro"; that "plaintiff is able to work and refuses to work because of the alimony now being made [paid] to her."
Defendant prayed the court to vacate and set aside the order awarding the above mentioned amounts to plaintiff for alimony and for support and maintenance of the minor child, Rochelle Lee Shapiro, by decreasing the amounts thereof.
In answer to defendant's motion to modify the decree plaintiff filed a motion in which she charged that the allegations in defendant's motion were insufficient to grant defendant the relief prayed for and she prayed the court to increase the amount which had been allowed her as alimony and *888 to increase the amount allowed her for the support and maintenance of said minor child, and for a reasonable sum as counsel fees in prosecuting her motion and in defense against the motion of defendant herein.
The motions were heard by the court on March 17, 1950, and on March 24, 1950, the court denied plaintiff's motion for an increase in the allowance to her, and sustained in part defendant's motion to modify the decree by ordering that defendant continue to pay $20.00 per week for the support of the minor child but reducing the alimony award to plaintiff from $15.00 per week to $5.00 per week. Thereafter in due time plaintiff filed a motion for a new trial, which was overruled by the court and plaintiff duly appealed.
At the hearing defendant Irving I. Shapiro in support of his motion to modify testified that at the time the decree of divorce was granted on April 30, 1947, he was earning $400.00 per month; that at the time of the hearing on said motion, on March 17, 1950, he was earning $127.00 per week from which was deducted Federal taxes of $10.00 per week, Social Security taxes of $2.00 per week as well as payments for health insurance on his second wife and a child of his second marriage as well as the child of his former marriage amounting to $3.00 per week; that his traveling expenses ran about $10.00 per week with entertainment expenses of $5.00 per week; that at the time the divorce decree was granted he did not have entertainment and traveling expenses; that he was married to his second wife on May 10, 1947, and one child was born of that marriage.
Over plaintiff's objections defendant was permitted to testify that he contributed to the support of his mother and father the sum of $15.00 per week; that his parents have no other regular income; that his father is unable to work because of cataracts and an artery which causes temporary loss of memory; that his estimated household expenses at the time of the hearing were: food $25.00 per week, rent $15.00 per week, utilities $15.00 a week, doctor bills $10.00 a week, drugs $10.00 a week; that he owed his mother $500.00 and owed $600.00 on his automobile; that he had borrowed $2000.00 from his lawyer to whom he was at the time of the hearing on the motion paying $100.00 a month.
Defendant further testified that the child of his marriage to plaintiff would be seven years old in September 1950, and that she goes full time to school; that his mother takes care of some children for the Board of Children's Guardians for which she receives $11.00 per week for room and board of such children.
Over the objections of plaintiff, defendant was permitted to give the reasons for his having entered into the stipulation at the time of the divorce action for the payment of $20.00 per week for the support of the child and $15.00 per week as alimony for plaintiff. In this connection defendant testified that plaintiff told him at that time that it was necessary for her to stay at home and take care of the child because the child was then too young for the mother to go out to work.
On cross-examination defendant again testified that he was earning $400.00 per month at the time of the divorce; that at the time of the hearing on the motion to modify he was earning $127.00 a week from which was deducted amounts for items similar to those deducted by his employer when he was receiving $100.00 per week; that he was at the time of the hearing manager of a Katz Drug Store in St. Louis; that he married his second wife about ten days after the divorce was granted to his first wife; that although he was contributing to the support of his mother, he borrowed $500.00 from her some years ago to pay plaintiff's attorney's fees; that the $2000.00 he borrowed from his lawyer was to pay off some people he owed money to in order to keep up during the course of a year's time; that he did not believe that his daughter by his first marriage, being then seven years of age, requires more clothes at that age than she did at the age of two. It appears that the parties separated when their child was two years old. Defendant further testified that he knew that his former wife had their child treated by a doctor and that the *889 child takes dancing lessons; that he wants the child to have the necessities that a child of her age requires to be properly taken care of; that he was willing to have plaintiff secure employment; that to the best of his knowledge his former wife is healthy and able to work and that she has no physical defects that would prevent her from working; that he is willing to have plaintiff secure work and have their child taken care of by his mother.
Plaintiff, Julia Shapiro, testified that she and the child live with her mother; that her mother is past sixty-two years of age and had been ill all winter and is not able to take care of the child during plaintiff's absence; that if she went to work it would be necessary to employ someone to take care of the child which would probably cost more than she, plaintiff, could earn; that she prepares the food for the child in the morning, dresses her and personally takes care of her; that she takes her to dancing lessons; that she could not go to work and give her child proper care and attention; that she would be willing to work if it did not affect the welfare of the child and that she hopes to go to work when the child is older and able to take care of herself; that her expenses during the past year other than household expenses were for a tonsillectomy and hospital bills, doctor bills and medical attention from time to time; that since the divorce was granted there has been an increase in the purchase price of clothes for the child over what it was when the child was two years of age.
Plaintiff further testified that when children go to school "they require a lot more clothes"; that the average expense for the child's clothing is over $100.00 a year; that she pays her mother $20.00 a week for board for herself and the child and that the remaining $15.00 of the court's total allowance she uses for other necessities for herself and the child; that she requested the court for an increase in allowance because her expenses for the support of herself and child had increased since the divorce; that a total of $45.00 per week would be a fair allowance; that she carries insurance on the child for which she pays $45.00 per year and also hospital insurance for herself and the child which costs $24.00 per year; that the child goes to school every school day from quarter to nine to noon, is then home for lunch and goes back to school in the afternoon until 3:25 o'clock; that once in a while she takes her lunch with her to school. Plaintiff contends that the court erred in reducing the amount which had been previously awarded for her support and maintenance. It is argued in her behalf that there was no evidence to show defendant less able to pay the award of alimony at the time of the hearing than when it was originally made, but on the contrary, that the evidence showed his earnings were $1804.00 per year more at the later date.
The authority of the court to modify a judgment for alimony and maintenance is found in Section 1519, R.S.Mo.1939, now Section 452.070, R.S.Mo.1949, which, insofar as applicable to his case provides: "The court, on the application of either party, may make such alteration, from time to time, as to the allowance of alimony and maintenance, as may be proper, * * and enforce such order in the manner provided by law in other cases."
Under the above statute it has been consistently held by our courts that authority for a modification of a judgment for alimony is dependent on a change in the circumstances of the parties between the time the judgment was entered and the time the motion for modification was filed. Schulte v. Schulte, Mo.Sup., 140 S.W.2d 51.
It will be observed that the only evidence presented at the hearing on the motion to modify herein was the testimony of defendant and plaintiff. The rule has been long established and applied in many decisions of our courts that in such a case as this (a nonjury case) an appellate court should not interfere with the findings and conclusions of the trial judge unless there has been a manifest abuse of judicial discretion by the trial judge. Furthermore, in resolving conflicts in the testimony the appellate court will defer largely to the findings of the trial judge because of his *890 much better opportunity to judge of the credibility of the witnesses whom he has seen and heard whereas an appellate court has only the cold record to judge from. Rinkel v. Rinkel, Mo.App., 204 S.W.2d 451; Mahan v. Mahan, 239 Mo.App. 317, 192 S.W.2d 626. In this case it is more a conflict between the parties as to their conception of their respective rights and duties than a conflict in their testimony which we are dealing with.
The above rule of deference does not, however, mean that the appellate court is bound to accept the trial court's rulings and conclusions if after considering the whole record the appellate court finds just grounds for reaching different conclusions. The appellate court must reach its own conclusions, but it should not interfere with the judgment of the trial court unless it is apparent from the record that such court has clearly abused its judicial discretion. These rules have been worked out through years of experience and patient study and are intended to give appellate courts power to prevent trial judges from rendering unjust or arbitrary decisions while at the same time preventing appellate courts from arbitrarily or unjustly picking faults in the rulings of courts and improperly interfering with their judgments. The whole purpose of appellate procedure is to insure to all litigants one, but no more than one, fair trial.
We believe we should say at once that we are of the opinion that the court's action in denying plaintiff's motion for an increase in the allowances to her and for the child's maintenance was correct. There was no evidence upon which any such increase could have been ordered without a clear abuse of judicial discretion.
The question of supreme importance in this case is whether there was sufficient substantial evidence to show such a change in the conditions and circumstances of the parties, between the time of the original judgment and the hearing on the motion to modify, as to warrant the court in reducing plaintiff's own allowance from $15.00 per week to $5.00 per week. It will be recalled that the court ordered defendant to continue to pay $20.00 per week for maintenance of the child, thus refusing to reduce or increase that item.
Plaintiff earnestly contends that the financial condition of defendant was better at the time of the hearing than it was when the original judgment was rendered and that the court, therefore, erred in reducing plaintiff's allowance of alimony. If defendant's earnings were the only matter to be considered plaintiff's argument would be sound, but we must consider all of the evidence, not only a part of it.
The evidence shows that although defendant was earning more money at the time of the hearing herein than at the time of the divorce, it also shows that he was required to meet such heavy expenses for upkeep and payment of debts that the increase in earnings was not sufficient to meet the increased expenses and he was compelled to borrow money to keep going. It is shown in evidence that defendant was married again shortly after the divorce was granted to plaintiff and he now has a child one year old by the second marriage which means additional expenses that he must meet. It is true that remarriage of defendant alone is not such a change of condition as to warrant a reduction of alimony to the former wife, but said remarriage, coupled with the birth of another child whom defendant must support, are circumstances to be considered along with all the other evidence in determining what is a reasonable sum to require defendant to pay to plaintiff. The law requires that the conditions and circumstances of both parties must be considered in determining plaintiff's reasonable needs and defendant's ability to pay. Schwent v. Schwent, Mo.App., 209 S.W.2d 546.
Defendant's testimony shows that the various obligations and debts made a total of $259.00 per month which he was paying out of his earnings; that his income after deductions at the time of the hearing was $112.00 per week; that his expenses for traveling, entertainment, food, utilities, medical attention, and drugs, and support for his parents totaled $105.00 per week. *891 In addition to the foregoing, defendant stated that he had to pay for laundry, cleaning, clothing, and other similar items to keep a home for his wife and the second child.
It is true that the law does not recognize a divorced husband's second marriage alone as a ground for cutting down an allowance of alimony to the divorced wife where the divorce was granted because of the husband's fault and through no fault of the first wife. See Anderson v. Norvell-Shapleigh Hardware Co., 134 Mo.App. 188, 113 S.W. 733.
However, the above mentioned rule does not govern where, as here, another child has come into the picture to add to the defendant husband's legitimate expenses for it is as much defendant's duty to support his child by the second marriage as it is to support the child of his first marriage. The evidence shows that defendant's total of debts and expenses have increased to such an extent as to make the continued payment of the full amount of alimony originally awarded to plaintiff for her separate support oppressive and unreasonably burdensome. Although the law requires a husband, whose wife has been granted a divorce, to pay such former wife alimony, it is not the purpose of the law to punish the husband by requiring him to make payments beyond his reasonable ability to pay as shown by the evidence. Schwent v. Schwent, Mo.App., 209 S.W.2d 546.
The general rule as to alimony for support of a divorced wife is stated in 27 C.J.S., Divorce, § 233, p. 958, as follows: "The age and physical condition of the wife, including her life expectancy, should be considered. If from age and infirmity she is incapable of contributing to her own support, she should be provided for more liberally than if she were young and vigorous, and, conversely, if she is young and vigorous it is a circumstance tending to diminish the need for or the amount of alimony." (Emphasis ours.)
None of the testimony of plaintiff as to his debts and expenses was disputed and it shows that he was actually carrying a financial burden beyond his capacity to meet. In a comparatively recent case this court while recognizing that alimony should be such as to maintain a wife in the station of life to which she is accustomed and belongs and in the style which the financial condition of the husband entitles her, nevertheless also said: "The wife should not be supported so as to enable her to live in idleness, unless in an exceptional case where she is unable to assist herself by reason of illness. * * * it would be of little avail to the wife for the court to hang a millstone about the neck of an errant husband in the way of excessive alimony as would break down all incentive to exertion and endeavor to carry on by him." Schwent v. Schwent, Mo.App., 209 S.W.2d 546, 547.
We are of the opinion that the trial judge's action in the case at bar, in reducing the alimony awarded to plaintiff for her own support, is based upon substantial evidence and does not indicate an abuse of discretion. There was no evidence to show that plaintiff is unable to work and contribute to her own support. The undisputed testimony is to the contrary. Furthermore, the child in question is now past seven years of age and goes to and returns from school and does not require the constant personal attention of plaintiff as it formerly did. The child is now gone from home the greater part of the day on school days thus leaving plaintiff free to work and contribute to her own support as many mothers of children are constantly doing where the financial condition of the parties makes it necessary.
Formerly the theory with respect to alimony which prevailed in this state was to the effect that the allowance of permanent alimony was based upon the husband's obligation to support his wife after a divorce was granted to the wife for the husband's misconduct. It was held in some cases that the allowance of alimony to the wife under such circumstances was mandatory. However, that theory of alimony no longer prevails as was pointed out in Knebel v. Knebel, Mo.App., 189 *892 S.W.2d 464, 467, wherein this court said: "Such former theory of the husband's continuing obligation has now been rejected in this state, and instead we have come to the more modern view, as ably expressed by the Supreme Court in Smith v. Smith, 350 Mo. 104, 164 S.W.2d 921, 923, where the court had the following to say: `* * * The essential nature of alimony as it is comprehended today furnishes no reason for its mandatory allowance. Alimony is not automatic. Because of our modern legal conception of marriage as a contract and not as a sacrament, and because of our statutory divorce that is absolute rather than a legal separation with continuing obligations, alimony has acquired new and artificial characteristics. The marriage contract obligates the husband to support his wife as long as they shall live. But absolute divorce completely dissolves this contract. * * * The parties are released from the mutual obligations imposed by marriage. But in the interest of social welfare and justice the law has created a purely statutory liability incidental to divorce. Such is the alimony of today. When a divorce is decreed because of the husband's fault the statutes authorize the court to impose liability on the husband, if it would be reasonable to do so, for the future maintenance of the wife. * * * Still, the exercise of this power by the court is not mandatory. An order for alimony may be granted or refused according to the particular facts of each case, * * *.'"
What was said by this court with respect to the allowance of alimony in the trial of a divorce action is equally applicable on a motion to modify an allowance of alimony such as we have before us and is peculiarly appropriate to be applied to the facts of the case at bar. In said Knebel case the wife appealed from a decree denying alimony and this court held that the allowance of alimony not being mandatory but discretionary, it must affirmatively appear that such discretion has been abused by the trial court before the appellate court will be moved to interfere. This court then proceeded to hold that there are certain factors and elements which must also invariably enter into consideration such as the financial status of the parties, their individual estates, incomes, obligations and necessities, their respective ages, health and ability to follow gainful occupations and a number of other elements which were referred to in the opinion.
It is true that no question of the custody and support of a child was involved in the Knebel case, supra, but we believe that what was said in that case with respect to the duty of a divorced wife is applicable to this case, namely: "Certainly a divorced wife should have no right to feel that she should be permitted to sit in idleness at the expense of her former husband as the mere consequence of the fact that he was adjudged the guilty party. Under modern economic and social conditions, practically every avenue is open to the wife that is open to the husband; and if, upon the dissolution of the marriage, she has individual means of support or the capacity to earn her own livelihood, she should be expected to employ her means or capacity to that end the same as any other member of society." Knebel v. Knebel, Mo.App., 189 S.W.2d 464, 468.
Upon a review of all of the evidence in the case at bar we are of the opinion that the trial court reached a conclusion that is as close to justice to both parties as is possible in the solution of these difficult problems.
The judgment of the trial court is accordingly affirmed.
ANDERSON, P. J., and BENNICK, J., concur.