Nancy Jane **LANDRETH,** Plaintiff-Appellant,

v.

Edward Harvey **LANDRETH,** Defendant-Respondent.

No. 7759.

Springfield Court of Appeals.

Missouri.

June 29, 1959.

Elroy S. Thomas, Joplin, for appellant.

Robert P. Warden, Joplin, for respondent.

McDOWELL, Judge.

Plaintiff, Nancy Jane Landreth, appeals from a judgment of the Circuit Court rendered on defendant's motion to modify a decree of divorce with respect to alimony.

Plaintiff obtained a decree of divorce from defendant in the Circuit Court of Jasper County, December 12, 1956. By said decree plaintiff was granted the care and custody of the two minor children, Jane Ann, age 14 years, and Frederick Harry, age 9, and defendant was ordered to pay plaintiff $175 per month child support and $200 monthly alimony, beginning January 1, 1957.

January 28, 1958, defendant, Edward H. Landreth, filed motion to modify the divorce decree, alleging that since the rendition of said decree plaintiff's income had materially increased and his income had materially decreased and he was no longer able to make the alimony payments.

The evidence shows that the trial court, by agreement of the parties, used defendant's income for 1955 as a basis for determining the amount of child support and alimony allowed.

Defendant's income for 1955 was derived from two sources:

1. 95% of all his income is from his interest in oil properties in Texas, which were given him by his father and aunt.

2. He was, and is, the sole owner of Morton Booth Company, also known as the Webb City Planing Mill, a manufacturing business located in Webb City.

He testified that in 1955 his gross income from Stanolind Oil Company was $12,060.47, and from Phillips Oil Company, $288.89, a total of $12,349.36, less production tax, left a balance of $11,400 approximately; that the Webb City Planing Mill operations showed a loss of $5,213.27 for 1955.

In the year 1957 defendant realized a gross income from Stanolind Oil Company of $10,133.64, and from Phillips Petroleum Company $450.04, less production tax of $472.

His loss in the operations of the Planing Mill for 1957 was $596.71 due to increased sales. Defendant explained he had been operating the Planing Mill at a loss through the years because he thought it would finally be a profitable business; that he now has a contract to produce cabinets for Sears-Roebuck for half a year.

He testified that his income from interest in the two oil properties is dependent upon regulations imposed by the State of Texas, the general level of demand for petroleum products and depletion of the oil reserves; that the production days allowed by Texas to the properties which produce defendant's oil income were two-thirds fewer days in 1958 than in 1955; that income from Stanolind in the future will be about $300 per month. A memorandum of income for the months of October, November and December, 1957, was introduced as defendant's exhibit (B) and shows monthly income from said oil properties to be $303, $504, and $655, respectively; that his income from oil properties

in January, February, March, and April, 1958, averaged $475 per month.

Defendant produced his 1955 and 1957 income tax returns, which were introduced in evidence as plaintiff's exhibits 1, 2, and 3. They corroborated defendant's oral testimony that his net income from oil properties in 1955 was $11,400 and his loss on his Planing Mill operations for 1955 was $5,214.27; that his net income on oil properties for 1957 was $10,294.79 and his loss on Planing Mill was $596.71.

He testified that he borrowed money from the Citizens Bank of Joplin and from his sister in 1957 and that he now owes the bank $2,000 and his sister $2,000; that on May 26, 1958, he had $25 cash in his personal account and $700 in business account.

Defendant is 35 years of age, able-bodied. He holds a Master of Business Administration degree from the University of Oklahoma, has had four years experience as instructor in that university and training as a civil engineer.

In September, 1957, he re-married and lives in the home with his wife and pays no rent. He admits he has purchased an interest in a duck pond; that he took credit on his 1957 income tax return for expenses for money spent at Hidden Acres, a supper club, of $584.23; $242.13 expenses incurred at Wilders Inc., a social club; $186.49 expenses at Connor Hotel; $308 at the Joplin Club, and played bridge for small amounts. He said he lost money on the stock markets in 1954, 1955, but did not remember if he lost in 1957. He admitted attending football games in different states in 1957, bridge tournaments, etc.

Defendant paid the support and alimony judgment through November, 1957, but is in default on part of the payments due thereafter.

Plaintiff is 35 years of age, lives in a rented home in Joplin with her two children; when six years old she had polio and as a result, had an operation when she was

14, which left her with a slight limp. She weighs 103 pounds. She has a Bachelor of Science degree in elementary education from the University of Oklahoma, which enables her to teach in Missouri for two years. She is employed in the Joplin School system for 1957–58 at a salary of $3,600 per annum and has a contract for the following year at a salary of $3,800. In 1957 she received $1,200 for four months. If she continues teaching she will be required to go back for additional training to some school.

She submitted an itemized account of all her expenses incurred in 1957. The expenses for the first eight months prior to teaching were $380 per month. After she started teaching her average monthly expenses for the family were $514; while teaching she had additional expenses for clothes, cleaning, domestic hire and automobile expense. She purchased a washing machine and television. In addition to the $514 expenses, plaintiff owes $45 per month income tax. She has certain professional dues and has made small contributions to her church and for hospitalization insurance. She donated $12 to the United Fund.

Plaintiff owns 40 shares of stock in Ozark Engineering Company and receives a yearly dividend of $160.

At the time of hearing of this cause plaintiff had $20 in the bank, was indebted to her mother for $200 and to the Federal Government for income tax $357.60; $140 open account for clothing, etc., and an undisclosed amount to a C.P.A., and her attorney.

■ A modification of a judgment for alimony is dependent on a change in the circumstances of the parties between the time the judgment is entered and the time the motion for modification is filed. Shapiro v. Shapiro, Mo.App., 238 S.W.2d 886, 889; Schulte v. Schulte, Mo.Sup., 140 S.W.2d 51; section 452.070 RSMo 1949, V.A.M.S.; Shilkett v. Shilkett, Mo.App., 285 S.W.2d 67. In the last-cited case, this court in an opinion written by Judge Stone, stated on page 68 [1–2] of 285 S.W.2d:

"At the outset, we emphasize the firmly-entrenched principles that a judgment for alimony, like any other judgment in an action at law, is res judicata as to all facts and conditions bearing upon the award and existing at the date of its rendition [Jourdan v. Jourdan, Mo.App., 251 S.W.2d 380, 382 (3); Goldstein v. Goldstein, 237 Mo. App. 274, 165 S.W.2d 876, 879(4)—consult also Hurley v. Hurley, Mo.App., 284 S.W.2d 72; Lehr v. Lehr, Mo.App., 264 S.W.2d 35, 36(1); Shepard v. Shepard, Mo.App. 194 S.W.2d 319, 323(3); Foster v. Foster, Mo.App., 146 S.W.2d 849], and that authority for modification of a judgment for alimony is dependent upon proof of a subsequent change in conditions. Schulte v. Schulte, Mo., 140 S.W.2d 51, 54(5); Shapiro v. Shapiro, Mo.App., 238 S.W. 2d 886, 889(1); State ex rel. Scott v. Harris, Mo.App., 136 S.W.2d 78, 80(1); Couplin v. Couplin, Mo.App., 121 S.W. 2d 186, 187(2). Of course, the burden of showing such change rests upon the movant. Samland v. Samland, Mo. App., 277 S.W.2d 880, 881(4); Seigfreid v. Seigfreid, Mo.App., 187 S.W.2d 768, 769(1)."

■ Proceedings for modification of alimony decrees are reviewed de novo and the appellate court has the duty of making its own findings of facts and conclusions of law. Jourdan v. Jourdan, Mo.App., 251 S.W.2d 380; Coggburn v. Coggburn, Mo.App., 256 S.W.2d 836; Shilkett v. Shilkett, supra. In an action in which there is no definite or legal measure of recovery, which is especially true in the case at bar, the amount properly allowable is deemed a matter of discretion for the trial judge to such an extent that his decision will not be disturbed unless the amount awarded is so excessive or inadequate as to appear to be an abuse of judicial discretion. If it appears that the discretion-

ary power was not soundly exercised, it becomes the duty of the reviewing court to reject the ruling made. Harriman v. Harriman, Mo.App., 281 S.W.2d 566, 570(2); Simon v. Simon, Mo.Sup., 248 S.W.2d 560, 568(8); Brinker v. Brinker, 360 Mo. 212, 227 S.W.2d 724, 725; Shapiro v. Shapiro, supra.

We need consider but one alleged error in this appeal and that is, did the trial court abuse its judicial discretion in sustaining defendant's motion to modify by completely eliminating all payments of alimony awarded in the divorce decree?

Defendant relies upon two grounds to sustain the action of the trial court: 1. That the income of plaintiff has been materially increased since the divorce decree, and, 2. Defendant's income has been materially decreased since the divorce decree.

The evidence as to plaintiff's income is undisputed. She secured a position as teacher in the Joplin schools in the year 1957–58 at a salary of $3,600 per annum and that for the four months in 1957 she received a salary of $1,200; that she will continue to teach at Joplin next year at an increased salary of $3,800 per annum.

The evidence as to defendant's income since the divorce decree shows his income has been materially increased. Defendant's evidence is that he had two sources of income: 1. Income from two oil properties, and, 2., from the operation of a Planing Mill. These were the only sources of income defendant had at the time the decree of divorce was granted and at time of the filing of motion to modify.

He testified that his net income from oil properties in 1955 amounted to $11,400; that he sustained a loss in the operation of his Planing Mill in the amount of $5,214.27. His income tax return for 1955 shows that defendant received a depletion deduction on income from Stanolind Oil property of $3,316.63 and from Phillips Oil of $79.44.

Defendant testified that his gross income for 1957 from oil properties was $10,133.64 from Stanolind and $450.04 from Phillips Oil; that there was a depletion deduction on Stanolind allowed in the sum of $2,786.75 and on Phillips Oil of $123.76. From defendant's oral testimony as to his income and his income tax returns, which he testified were correct, his income for 1957 was materially increased.

In Harriman v. Harriman, supra, 281 S.W.2d at page 570, the court stated the law: "An award of alimony to the divorced wife is based on the principle that it is the statutory duty of the husband, in so far as he is able, to contribute such amount as will, supplemented by the wife's earnings and other income, enable her to live according to the station in life which she enjoyed when the decree of divorce was granted. Such being its foundation, our statute, Section 452.070 RSMo 1949, V.A.M.S., wisely recognizes that a change in circumstances may require a change in the decree; and as the measure of the sum required is necessarily the needs of the wife and the ability of the husband to pay, the amount allowed will logically be affected by a change in either element."

In Shilkett v. Shilkett, supra, 285 S.W.2d at page 70 [3–5], this court stated: "We recognize that, as defendant urges, allowance of alimony to a wife, to whom a divorce is granted, is not mandatory [Smith v. Smith, 350 Mo. 104, 164 S.W.2d 921, 923(3); Simmons v. Simmons, Mo.App., 280 S.W.2d 877, 881(4); Baker v. Baker, Mo.App., 274 S.W.2d 322, 324(1)], and that, under our present concept of alimony, a divorced wife, who is capable of assisting herself, has no right to insist that her husband maintain her in idleness and luxury, simply because he has been adjudged the guilty party. Stokes v. Stokes, Mo.App., 222 S.W.2d 108, 113; Schwent v. Schwent, Mo.App., 209 S.W.2d 546, 547(1); Knebel v. Knebel, Mo.App., 189 S.W.2d 464, 468. Nevertheless, it has been said repeatedly that the allowance of alimony is in the nature of an award of damages because of the husband's breach of the marriage contract [Brinker v. Brinker, 360 Mo. 212, 227

S.W.2d 724, 726–727(4); Schulte v. Schulte, supra, 140 S.W.2d loc. cit. 54; Nelson v. Nelson, 282 Mo. 412, 221 S.W. 1066, 1068–1069(7); * * *".

█ Divorce dissolves all marital obligations. But in the interest of social welfare and justice the law has created a purely statutory liability incidental to divorce. Such is the alimony of today. When a divorce is decreed because of the husband's fault, the statute authorizes the court to impose liability on the husband, if it would be reasonable to do so, for future maintenance of the wife. The court has said the allowance of alimony is in the nature of an award for damages because of the husband's breach of the marriage contract. Brinker v. Brinker, 360 Mo. 212, 227 S.W.2d 724, 727 [3–4].

The legal rule generally followed in determining alimony is stated in Coggburn v. Coggburn, supra, 256 S.W.2d at page 840, to-wit:

"* * * In determining the amount of alimony that should be allowed a wife, the court should consider the wife's conduct as bearing on marital difficulties, her health, age, needs, obligations and dependents, her income and earnings as well as her capacity to earn, her contributions to the joint estate and the rights she may have acquired in her husband's real estate by virtue of the marital relationship. Stokes v. Stokes, Mo.App., 222 S.W.2d 108."

In Simon v. Simon, Mo.Sup., 248 S.W. 2d 560, 568 [6–7], this law is stated: "* * * Whether allowances for these items should be made and, if so, the amounts thereof must be determined by the facts in each particular case. Almost invariably certain facts enter into any such determination: the length of the marriage, the respective financial positions of the parties, their ages, health, training, and education, their respective contributions to any accumulations, whether there are minor children and their ages. Carr v. Carr, Mo. Sup., 232 S.W.2d 488, 490 [5]; Knebel v. Knebel, Mo.App., 189 S.W.2d 464, 467 [6, 7]."

Each case must be decided upon the particular facts in such case. As to marital difficulties we are not advised by the evidence. We conclude that the parties lived together some 14 years. The fact that the trial court awarded a divorce to plaintiff, together with custody of two minor children, points to defendant's guilt of his marital obligations. We are, likewise, impressed by plaintiff's physical condition. She only weighs 103 pounds, is still limping from an attack of polio and an operation. She is 35 years of age and if she maintains her earning capacity will be required to have additional expense of returning to school. She has the obligation of caring for the minor children. Each year as they grow older, the cost of such care will increase. She will, in her physical condition, of necessity need domestic help. The evidence is undisputed that during the months plaintiff has been teaching her average expense for living was $514; that this did not include $45 per month income tax which she still owes the Government. The evidence is undisputed that plaintiff has not been able to meet her bills for living expenses. She owes her mother $200 for money borrowed, $140 on open account for clothing and the Government $357 for taxes. Plaintiff's furniture is old and naturally she will have additional expense to refurnish her rented house. When she goes to school she will of necessity take her children with her.

The evidence convinces the court that plaintiff's expenses were necessities of her family; that the expenses of defendant, to a great extent, were not for necessities but for luxurious living. In 1957 he purchased an interest in a duck pond, spent nearly $1,500 in social clubs, and attended football games in different states and bridge tournaments. While the plaintiff's income has substantially increased, her financial requirements have, likewise, increased be-

cause of the additional work necessary to earn the increased income.

■ We find from the evidence that under the judgment of the trial court discontinuing the alimony payments, plaintiff's income will be insufficient to maintain her and her children, especially while she is attending school. Plaintiff is entitled to be maintained in that station in life enjoyed by her at the time of the divorce. Harriman v. Harriman, supra, 281 S.W.2d at page 570 [1]. We recognize that in actions where there is no definite legal measure of recovery, as in this action, the amount properly allowable is deemed a matter of discretion with the trial court to such an extent that his decision will not be disturbed unless the amount awarded is so inadequate as to appear to be an abuse of judicial discretion. But if the trial court has reached an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances, his judgment will be set aside as an abuse of discretion. It is our duty, upon a review of the case de novo, to determine the right and justice of the matters in controversy. From the evidence we find that the discretionary power was not soundly exercised and it is our duty to set aside the judgment.

It is therefore ordered that the judgment of the trial court ordering all alimony payments discontinued be set aside and that judgment be entered sustaining defendant's motion to modify and that the alimony payments of $200 per month be reduced to $125 per month.

STONE, P. J., and RUARK, J., concur.