### LUCKETT v. LUCKETT.

No. 28683.

St. Louis Court of Appeals.

Missouri.

Dec. 15, 1953.

Preston Quick, St. Louis, for appellant.

Morris A. Shenker and Bernard J. Mellman, St. Louis, for respondent.

BENNICK, Presiding Judge.

This case originated as an action for divorce which was brought by the husband, George Luckett, against his wife, Josephine Luckett. The petition charged indignities, and concluded with a prayer that plaintiff be divorced from the bonds of matrimony contracted with defendant. There were no children born of the marriage.

The defendant's answer was a general denial of the indignities charged against her, coupled with a cross-bill in which she prayed for a decree of separate maintenance. Not only was defendant permitted to file her cross-bill for separate maintenance in her husband's action for divorce, but unless she should forfeit her right to assert such existing cause of action, it was mandatory upon her that she do so. State ex rel. Fawkes v. Bland, 357 Mo. 634, 210 S.W.2d 31. Among other things she alleged the two essential elements of her cause of action for separate maintenance—that plaintiff had abandoned her without good cause, and had refused and neglected to maintain and provide for her. Section 452.130 RSMo 1949, V.A.M.S.

After a trial of the case the court found that plaintiff was not an innocent and injured party, and consequently not entitled to a divorce as prayed in his petition. It found, however, that defendant was entitled to a decree of separate maintenance under her cross-bill, and awarded her the sum of $90 a month for her support.

Following the entry of such decree, plaintiff filed his motion for a new trial upon both his petition for divorce and defendant's cross-bill for separate maintenance; and the same being overruled, he gave notice of appeal, and by proper successive steps has caused the case to be transferred to this court for our review.

Plaintiff argues, of course, that the court erred in denying him a decree of divorce and in awarding defendant a decree of separate maintenance. On the contrary, he insists that the decree of separate maintenance should be reversed and the cause remanded to the circuit court with instructions to grant him a decree of divorce.

Plaintiff is a Pullman porter, and runs between St. Louis and Los Angeles. The requirements of his job are such that he is away on his run for six days and then home for six days.

Plaintiff had resided in St. Louis for many years, while defendant had been a

resident of Berkeley, California, where at one time she had operated a tailoring and cleaning shop. Both of the parties had been previously married, and each had a daughter by the previous marriage. The daughters were seemingly adults. Defendant's first husband had died. Whether plaintiff's first wife had died, or whether he was divorced, does not appear.

The parties had met in California about two months before the date of the marriage, which was February 28, 1949. The marriage took place in Los Angeles, and plaintiff then brought defendant to his home in St. Louis, where they began housekeeping. The separation occurred on November 28, 1951, and this action was instituted on January 17, 1952.

In July or August of 1948 (which was some months prior to any thought of marriage between the parties), defendant had conveyed her property in California to her daughter, and thereafter, according to her testimony, received no income from it. As to this the parties were in dispute, plaintiff's testimony being that she did receive income from rental property. Whatever the truth about defendant's income, she did have assets of some $2,500 at the time of her marriage to plaintiff. This sum apparently represented the proceeds of insurance covering a property loss she had sustained.

Upon defendant's arrival in St. Louis as plaintiff's wife, she found his home badly in need of redecorating and refurnishing. She shortly attended to these matters, and expended considerable sums in doing so. It was defendant's contention that she had paid these bills out of her own funds. Plaintiff insisted that she had only paid out some $200 of her own funds, and had done so voluntarily; and that as for the balance of the bills, he had contributed more than enough out of his earnings to meet all obligations. Whether she had paid the bills out of her own funds, or out of his personal contributions, he claimed not to know.

Plaintiff's evidence was to the general effect that he had conducted himself towards defendant as was to be expected of

her husband, but that she, for her part, had been quarrelsome and faultfinding without justification or excuse. According to plaintiff's testimony, defendant drank to excess; falsely accused him of associating with other women, particularly on his runs to the coast; interfered with his rest on his return home from his runs; cursed and abused him on numerous occasions; was critical of his visits to the local Pullman porters' club of which he was an officer; and was insulting towards certain men friends of his whom he occasionally attempted to bring into his home. The mistreatment from defendant of which he complained included violence to his person. The separation occurred when defendant threatened to kill him, and resulted in his finding new quarters while she remained in the home he had provided. He denied that he ever came home intoxicated, or that he had ever struck defendant or inflicted violence upon her. He was corroborated in his charge that defendant used liquor to excess.

Defendant's evidence, on the other hand, was to the effect that she had done her best to treat plaintiff with kindness and affection and to perform all her wifely duties in maintaining the home during the period she and plaintiff had lived together. As a matter of fact, she testified that plaintiff had given her no more than $20 or $30 every two weeks for the maintenance of the home, which was not enough to pay the normal household bills, with the consequence that she had been compelled to pay many of the bills out of her own resources. Indeed, all her own funds had become exhausted by the time of the trial, so that she had no income whatever except the sum of $90 a month which plaintiff had been ordered to pay her as alimony pendente lite. Prior to the entry of such order plaintiff had only contributed the sum of $100 over the period of four months that they had been separated, and had paid none of the household bills whatever.

According to defendant's further testimony, plaintiff was improvident to the point that she had found it necessary to buy him

certain articles of clothing out of her personal funds. He was often intoxicated, and a part of her grievance grew out of his action in frequenting the Pullman porters' club and other similar establishments. He often cursed her and abused her, according to her version of the facts; and had struck and beaten her when she would remonstrate with him over his drinking and the like. He boasted to her of his contacts with other women. Several witnesses testified that defendant was never intoxicated as plaintiff had claimed, and that upon their visits to her home they had invariably found it clean and well kept.

Plaintiff's evidence disclosed that he was earning something like $300 a month as wages, and that he realized enough in tips on his runs to take care of his expenses on the road. He admitted that after the separation he had only contributed the sum of $100 towards defendant's support until the entry of the order for alimony pendente lite.

The case at bar is typical of most cases of this character, where the decision turns entirely upon questions of fact.

In reviewing the evidence in such a case, it is of course our duty to reach our own conclusions on the facts; and neither are we bound by the findings of the lower court, nor may we abdicate our ultimate responsibility to direct the entry of such a decree as in our opinion the evidence justly warrants. Rusche v. Rusche, Mo.App., 200 S.W.2d 577. But where there is a sharp dispute in the testimony and the evidence does not greatly preponderate one way or the other, both reason and precedent dictate that in resolving the conflict we should accord due deference to the findings of the trial judge because of the fact that by having the parties and witnesses personally before him, he was afforded a far more favorable opportunity than we could possibly possess to determine the matter of their credibility. Frank v. Frank, Mo.App., 238 S.W. 2d 912; Greenbury v. Greenbury, Mo.App., 223 S.W.2d 153; Harviel v. Harviel, Mo. App., 247 S.W.2d 346.

As we have already shown, the testimony in this case was in direct conflict on most of the vital particulars. Viewed in the light of the background against which the controversy arose, and considered from the standpoint in which the respective parties were placed in their relations with one another, defendant's version of the facts appears the more probable, and certainly she had the greater measure of corroboration from what would seem to have been disinterested persons. It is our finding from the record that she and her witnesses were the more worthy of belief; and in accepting their recitation of the circumstances that led to the breakdown of the home that plaintiff and defendant had established together, we are strongly fortified by the fact that the trial judge reached the same conclusion after a fair, impartial, and patient hearing of whatever evidence the parties had to offer. There is nothing in the record to justify any change in the lower court's disposition of the case, and it must therefore stand adjudged that plaintiff shall be denied a decree of divorce, while defendant, on the other hand, shall have her decree of separate maintenance in the amount fixed by the lower court, as to which, incidentally, we find no complaint.

It follows that the judgment rendered by the circuit court should be affirmed, and it is so ordered.

ANDERSON, J., and HOLMAN, Special Judge, concur.