Floyd W. WHITE, Plaintiff-Respondent,

v.

Helen M. WHITE, Defendant-Appellant.

No. 22671.

Kansas City Court of Appeals.

Missouri.

April 7, 1958.

John F. Carmody, Moberly, Edgar G. Wayland, Alexander, Welliver & Wayland, Columbia, of counsel, for defendant-appellant.

Don C. Carter, Sturgeon, for plaintiff-respondent.

SPERRY, Commissioner.

Plaintiff, Floyd W. White, sued defendant, Helen M. White, for divorce, alleging indignities. Defendant filed answer, in the nature of a general denial, and a cross-bill seeking a judgment for separate maintenance. After a lengthy trial the court found the issues for plaintiff on his petition and against defendant on her cross-bill. From a judgment awarding plaintiff a decree of divorce and denying her motion for additional attorneys' fees, defendant has appealed.

Plaintiff was a locomotive fireman and engineer. His annual income, for the years immediately preceding the trial, was from $5,000 to $6,000. The parties were married August 15, 1942, following a courtship of some twelve or thirteen years, during which time they both lived in Moberly, Missouri, a very short distance apart. After their marriage they moved into a modern apartment located a short distance from their former homes. This was the only home they ever occupied during their married life.

Defendant operated a beauty parlor from 1929 until 1949, when she was compelled to sell it because she was no longer able to work. In 1943 plaintiff entered the service of the United States, as a railroad worker, and was stationed overseas a part of the time. He returned to this country and the parties resumed their marital relationship in 1945. From all of the evidence it appears that they had no serious trouble during these years but, in 1949, they ceased having any sexual relationship. However, regardless of that fact, there seems to have been no open conflict until January, 1955.

Plaintiff's testimony is to the effect that, in 1949, defendant was ill and visited various doctors; that she told him that the doctor had advised her that she should not have sexual relations because of some abnormality. Defendant's version of that matter is that plaintiff refused to have such relations with her because he claimed to have injured his back while working on the locomotive. She claimed that she sought such relations because she was advised by her doctors that it would tend to cure her nervous condition. From a reading of the record it is impossible to tell which version is true. Plaintiff stated that he suffered no back injury and did not tell defendant that he did, and that defendant spurned his advances.

Plaintiff stated that defendant spent a lot of time at her mother's home and neglected plaintiff; that she would get angry and go there over his protest. Defendant admitted that she spent time with her mother but only because of her mother's illness and plaintiff's absence because of his work. In her testimony she complained that he failed to take her places when he would go out. He testified to the effect that she was of a quarrelsome, nagging disposition, frequently called him vile names and cursed him; that her favorite name for him was "dirty s.o.b."; that she spoke ill of his mother and would not and did not have his mother in their home; that from the beginning of their marriage she had charged him with being with other women but did not name any one until in February, 1955. She admitted calling him a "dirty s.o.b.," on several occasions, but stated that she did not speak ill of his mother and that she did have her to dinner a number of times, particularly on his birthday. Defendant stated that

plaintiff used bad language toward her at various times, and that she long suspected him of infidelity; but she said nothing that occurred prior to February, 1955, when she learned of his association with another woman, would have been, or was, of sufficient consequence to cause her to seek a separation; that they had a serious quarrel in January, 1955, when he told her that he was going to get a divorce; that, during the week of February 14th, she was informed that he was associating with another woman; that they quarreled all of that week; that, about 3 a. m., on February 20th, he came home from his work and quarreled with her for being up (claiming that she was checking on him) she having gotten up to go to the bathroom; that they quarreled, and after they were both in bed he struck her in the back with his knee, knocking her out of bed; that when he arose, later, he packed his clothes and left her.

Plaintiff's version is that when he arrived home from work she arose, looked at the clock, and asked him what whore he had been with; that they quarreled until near 6 o'clock; that when he arose at about 11:00 a. m., she had his clothes packed and told him to get out; that he left her and has not lived with her since then; that, after the separation she drew out over $1,000, virtually all of their joint bank account; that she charged clothing, furniture, and other things to his account, in the amount of near $1,000; that she falsely charged him, in the presence of others, in a store, with having purchased a TV set for some woman; that she humiliated him by visiting the home of a woman acquaintance of plaintiff, and there creating a scene; that she humiliated him by trying to follow him, and having others to do so, in an effort to prove that he was associating with another woman.

Defendant testified to the effect that, after the separation, she and other women friends followed him, at night, to the home of another woman and threw a flash light on them, on the woman's back porch when they were entering the woman's apartment. Defendant offered corroborating testimony as to this matter; but the "other woman" denied the happening and offered evidence that the back porch was so enclosed, describing it, that defendant could not have thrown a light on it so as to see anyone on the porch, and suggested the name of a workman who could verify her testimony. This testimony went unchallenged by defendant. Defendant also offered testimony to the effect that plaintiff was seen at various times and places in an automobile with the "other woman". She was also corroborated in this by the testimony of a woman friend; but this testimony was contradicted by that of plaintiff and the "other woman."

█ The transcript consists of 469 pages and the testimony, throughout this long record, is one unbroken story of contradictions, one side offering one version of the happenings and events and the other offering equally strong evidence to the contrary. Where the truth lies, so far as an examination of the court record here is concerned, is beyond the comprehension of a Solomon, if one could sit in judgment. In such case we should and will defer to the findings of the trial judge, who saw and heard the witnesses. Schneider v. Schneider, Mo.App., 293 S.W.2d 157, 163.

█ If plaintiff's testimony is to be accepted as true, then he is the innocent and injured party. He has been subjected to humiliation and indignities over a long period of time, such as to render his condition in life intolerable, within the meaning of the divorce statutes. If defendant's testimony is accepted as true, then she is the innocent and injured party and is entitled to relief as prayed. The trial court found these issues for plaintiff and against defendant, after seeing and hearing the witnesses and parties in the court room for a period of several days.

Our statement of facts is very brief as compared with the record here, but we see no necessity to set out in detail all of

the facts that were in issue between the parties. The evidence is in irreconcilable conflict and we have attempted to set out enough to show that this is true.

■ ■ It is urged by defendant that plaintiff's testimony was uncorroborated and, for that reason, insufficient to support a judgment awarding him a decree of divorce. There was other testimony tending to corroborate plaintiff on some of his major contentions. But, if there had been no corroborating evidence to support his testimony, that would not be grounds for denial of his petition for divorce. Stevens v. Stevens, Mo.App., 158 S.W.2d 238, 240, 241.

■ Defendant urges error for the reason that the court improperly excluded certain testimony of her medical witness. This contention rests upon the fact that the court ruled that the doctor should not state to the jury what defendant told him in 1951, about her sexual relations with her husband. The court gave as its reason for its ruling that what she told her doctor was hearsay. However, the court permitted counsel for defendant to propound a hypothetical question to the witness wherein it was assumed that defendant was deprived of conjugal relations from 1949 to 1951, when the doctor examined her and upon which physical examination he was basing his testimony as to her nervous and distraught condition. The witness, in answer to the hypothetical question, stated that such condition would "I think make her nervous, worried * * I think the frustration would make her irritable." As the questioning of the witness by defendant's counsel continued, the witness eventually repeated the very same statement which had previously been stricken after objection. Therefore, the testimony which defendant complains was excluded was, in fact, finally admitted without objection. Defendant's complaint in this respect is without merit.

Complaint is made by defendant of the court's refusal to grant additional attorney's fees. Shortly after plaintiff's petition was filed defendant moved for attorney's fees, alimony pendente lite, and suit money. The court ordered plaintiff to pay defendant $150 per month alimony until the case was tried on the merits, and $300 attorney's fees. No appeal was taken from said order. At the close of the trial on the merits defendant renewed her motion for additional attorney's fees, which was denied. However, the court made an order for additional attorney's fees in the amount of $350, apparently for the appeal, and $250 for expense money. In addition to the above, defendant herself had employed additional counsel, for the trial on the merits, and had, herself, paid them $250. Her attorneys have, therefore, been paid a total of $900 for their fees, for their full services.

■ The court was qualified to judge of the reasonable value of the services rendered by the attorneys in this case. It was familiar with the amount of services performed by the attorneys, and of the ability of plaintiff to pay. The question of the amount to be allowed for attorneys' fees was within the discretion of the court. McCloskey v. McCloskey, 68 Mo.App. 199, 202. Such an order will not be disturbed on appeal in the absence of an abuse of discretion.

■ We cannot say that the court has abused its discretion in this case.

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.