**Ruth MITCHELL, Respondent,**

v.

**Russell MITCHELL, Appellant.**

No. 22870.

Kansas City Court of Appeals.

Missouri.

Jan. 12, 1959.

Don C. Carter, Sturgeon, for appellant.

C. M. Hulen, C. M. Hulen, Jr., Moberly, for respondent.

BROADDUS, Presiding Judge.

This is a divorce case, originating in the Circuit Court of Randolph County, in which Ruth Mitchell, respondent, is plaintiff and Russell Mitchell, defendant. On defendant's application for a change of venue the cause was sent to Macon County. It was heard on April 2, 1958, on plain-

tiff's petition and defendant's cross-bill, resulting in a decree of divorce being granted plaintiff. In addition to a divorce, the court awarded plaintiff custody of their child, a daughter, who was ten years of age on April 19, 1958, and $50 per month, child support, and $5 per month alimony to plaintiff. Defendant has appealed.

The parties were married on April 3, 1947, and separated on May 23, 1957. During that period they lived at various places in the neighborhood of Higbee, Missouri. Plaintiff worked at a hosiery mill and at a shoe factory, and after the birth of the baby she became employed again at the hosiery mill. Later on she worked in a grocery store in Moberly, known as the Foodliner, and in the general office of Orscheln Brothers. She testified that she treated her husband with respect, worked with him, and tried to get ahead and make a living; that her earnings were spent for whatever it was necessary to buy— groceries, car payments or light bills; that her husband always wanted her to work; that he was a farmer and also did odd jobs; that they owned a 1956 Ford car and a 1950 Chevrolet pick-up, and that while she was employed she made payments upon the car, the truck and the furniture from her wages; that the defendant would get mad at her at different times, and hit her with his fist; that while they lived south of Higbee, he hit her the first time, and blackened both of her eyes; that this occurred when she was helping him with some stock; that he hit her again and blackened her eyes when they lived on the Shultz place; that he struck her again and blackened her eyes while they lived on the Caldwell farm, while she was helping him load some hogs in the truck and she was not holding the gate to suit him, saying "and he just hauled off and hit me;" that on another occasion, when they were pulling a car with another car, the cars being tied together with a rope, she stopped to fix the rope and the rope broke, the defendant got out of the car and pulled her hair; that on another

occasion, they were fixing a well, that is, pulling a pipe and pump out of the well; that defendant was on top of the house pulling the pump and she was guiding the pipe, he wasn't satisfied with the way she was holding the pipe, so he took a brick off the chimney and threw it at her. On another occasion he broke her leg; that while she was working at the Foodliner he accused her of flirting with one of its owners; that at one time when plaintiff and defendant were going to dinner, he took her out to a roadway park, accused her of infidelity, kicked her, put his knee to her neck and threatened her; that they separated on this occasion, but, on his promise to cease such conduct, they went back together; that she thereafter quit her job at the Foodliner and went to work for Orscheln Brothers Truck Lines; that when she left defendant the last time, defendant had a pistol and was standing beside her bed, loading it, and she asked him what he was going to do and he said: "I promised you I wouldn't hit you, but I didn't say I wouldn't shoot you;" that she ran out of the house with her night clothes on, and after hiding by the side of the road, she went to the home of defendant's parents, and afterward on that same night, went to the home of her father and mother, at Higbee.

Plaintiff called to the stand seven witnesses who testified that her reputation for truth, veracity and morality was good. Some of these witnesses had known her since she was a child.

The defendant denied all of the accusations to which plaintiff had testified. He further testified that at least on two occasions he followed plaintiff and one of the owners of the Foodliner to a field near Moberly and saw them having sexual intercourse in the back seat of plaintiff's car. In rebuttal plaintiff vigorously denied these charges as did the store owner. Plaintiff also called to the stand two witnesses, one of whom was the sheriff of Randolph County, who testified that defendant's reputation for truth and veracity was bad.

As is to be seen this is a case in which there was an irreconcilable conflict in the testimony. The plaintiff testified to a state of facts which, if believed by the court, would entitle her to a divorce. The defendant testified to a state of facts which, if the court believed him, would entitle him to a divorce. In view of that situation the rule so well expressed in the case of Eikermann v. Eikermann, Mo. App., 283 S.W.2d 391, 394, should apply here. "In reviewing the evidence in a divorce case it is our duty to reach our own conclusions on the facts and it is our ultimate responsibility to direct the entry of such decree as in our opinion is justly warranted by the evidence. When the evidence is conflicting and the truth can best be determined by the conduct and demeanor of the witnesses on the stand, we defer to the trial judge who had the advantage of seeing them. Rusche v. Rusche, Mo.App., 200 S.W.2d 577; Luckett v. Luckett, Mo.App., 263 S.W.2d 41; Dallas v. Dallas, Mo.App., 233 S.W.2d 738."

We defer to the finding of the learned trial judge that plaintiff was the innocent and injured party and entitled to a decree of divorce.

Defendant's second point is that the court erred in awarding the custody of the child to plaintiff "because the evidence shows she was an unfit mother to have this young daughter." This contention is, of course, based upon his own testimony. It ignores the testimony of reputable people, including the sheriff of Randolph County, that plaintiff bore a good reputation for being a moral and virtuous woman. Our courts have said many times, that all things being equal, custody of very young children, especially girls, should be awarded to the mother. Certainly, under the facts of this case, there is no need to depart from that rule.

Finally, defendant contends that the award for child support was excessive. Defendant is an able-bodied man and, according to his own testimony, was working for a 'truck line drawing $2.44 per hour. The contention is without merit.

The judgment is affirmed.

All concur.