Leta DOLL (Plaintiff), Respondent,

v.

Lyman J. DOLL (Defendant), Appellant.

No. 30132.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1959.

Orlando A. Mundwiller, Hermann, for appellant.

Theodore P. Hukriede, Washington, for respondent.

## JOHN K. REGAN, Special Judge.

This action for divorce was brought by the wife, Leta Doll, against her husband, Lyman Doll. The petition charged general indignities and concluded with a prayer for divorce, custody of Karen and Nancy, the two minor children born of the marriage, and for money for their support. Defendant answered with a general denial and a cross-bill alleging general indignities, praying for divorce and custody of the children. The defendant's cross-bill was dismissed without prejudice by him at the conclusion of the plaintiff's evidence.

The trial court found that the plaintiff was the innocent and injured party and awarded her a decree of divorce, the custody of Karen aged ten and Nancy aged six, and $50 per month for the support and maintenance of the children.

Following the entry of such decree, defendant filed his motion for a new trial, and this being overruled he gave notice of his appeal and by proper successive steps has caused the case to be brought to this court for our review.

Defendant argues the trial court erred in granting plaintiff a divorce, custody of the children and money for their support, charging that plaintiff failed to demonstrate that she was the innocent and injured party. Defendant further contends that plaintiff not only failed to prove her allegations of general indignities but by her testimony, in effect, admitted most of said allegations were false and untrue. Finally, defendant contends that "wrangling" between husband and wife, due to lack of a conciliatory temper in both parties, is not an indignity and does not entitle either party to divorce.

The parties were married on September 1, 1940, in Hermann, Missouri, and the separation occurred in January 1957. This action was instituted on March 19, 1957.

Plaintiff's evidence was to the general effect that she had dutifully conducted herself toward defendant as was to be expected of his wife but that he, for his part, had been quarrelsome and fault-finding without justification or excuse. Further, plaintiff's testimony demonstrated that the onset of their difficulties occurred at the time of the death of plaintiff's father, whose will bequeathed plaintiff one dollar, it being defendant's position that she should contest the will. According to plaintiff the defendant quarreled with her about the presence of her mother in the home and continually quarreled and nagged at her, declaring the mother should find some place else "to roost"; although plaintiff testified her mother's presence was necessary in the home to care for the children while the plaintiff was away from home teaching school. Plaintiff testified the incessant nagging and bickering by the defendant caused her to be physically upset and emotionally disturbed, requiring her to receive medical attention.

Plaintiff testified it was necessary for her to work in order to supply the necessities for the home and food and clothing for herself and children. Also, plaintiff testified, defendant had not been gainfully employed since October 1955 and made little effort toward securing employment. Her testimony showed that from the time of the separation defendant had contributed little toward the support of the children other than paying one grocery bill and paying the utility bills for the house. On one occasion defendant had locked plaintiff out of the house, necessitating her crawling through a window to get clothes for herself and children. Further, plaintiff testified, defendant remained away from home all night

several times without telling her where he had been.

Defendant's evidence, on the other hand, was to the effect that he had performed his duties as a husband but that his wife had hit him with her purse once; that she would not remonstrate with her mother for quarreling with the defendant; nor make her mother leave the home of the parties. In addition, the defendant testified he had a stomach ulcer for which he had been operated upon several times. Defendant's testimony was that he had been employed as an investigator by a New York firm but his stomach condition had forced him to resign his position. He testified he applied for work at several places, but when the prospective employer learned of his stomach ulcer he had not been hired.

The defendant's evidence revealed at one time he had received $226.50 per month from the Veterans' Administration, which found him 100 percent disabled. However, in August 1957 the Veterans' Administration reviewed his case, after which time his disability rating was reduced to 50 percent and his compensation to $110 per month.

Defendant testified he had resided in the same house with plaintiff to March of 1957, when he had gone to the hospital. Upon returning home in April 1957, plaintiff requested him to leave. Thereafter he lived with his mother.

On the matter of remaining away from home all night, defendant testified this was occasioned by his mother-in-law playing the television so loud he was unable to sleep so he had gone to his mother's home in order to rest.

The trial court awarded the decree of divorce, custody of the children and $50 per month for the support of the children to the plaintiff on this evidence.

The defendant's first point on appeal is that this action is triable de novo as an equity case on appeal and that the appel-

late court reach its own conclusions and render such judgment as is warranted under the evidence. As a second point, which may be coupled with the first, defendant urges this court review the evidence, correct the error, and render such judgment as the evidence warrants.

This court, Luckett v. Luckett, Mo.App., 263 S.W.2d 41, 44, in an opinion written by Judge Walter Bennick, said:

"In reviewing the evidence in such a case, it is of course our duty to reach our own conclusions on the facts; and neither are we bound by the findings of the lower court, nor may we abdicate our ultimate responsibility to direct the entry of such a decree as in our opinion the evidence justly warrants. Rusche v. Rusche, Mo.App., 200 S.W. 2d 577. But where there is a sharp dispute in the testimony and the evidence does not greatly preponderate one way or the other, both reason and precedent dictate that in resolving the conflict we should accord due deference to the findings of the trial judge because of the fact that by having the parties and witnesses personally before him, he was afforded a far more favorable opportunity than we could possibly possess to determine the matter of their credibility."

The opinion in the Luckett case clearly defines the point and the position of this court on the review of the record in divorce actions.

Next, the defendant states the plaintiff was not entitled to a decree of divorce as she was not the innocent and injured party and the defendant states the evidence shows affirmatively that she was neither innocent nor injured.

The evidence in this case demonstrates plaintiff was required to work as a school teacher in order to support herself, the children of the parties, and to maintain their home. To do this it was necessary to have some person in the home caring

for the children, preparing meals and doing the endless number of things required in the proper management of a home. This role was filled by plaintiff's mother. No objection was offered by the defendant to his mother-in-law coming into the home nor to her assistance therein and otherwise until such time as he became engaged in litigation with his father-in-law. The record shows that defendant was supported in this litigation by his wife. Shortly thereafter the father died and defendant's claim against his father-in-law's estate was settled for $2,500. At that time plaintiff, who had urged the settlement, had said she was going to contest her father's will because she received only one dollar under the terms of that instrument. Thereafter plaintiff decided not to contest the will, which decision started the difficulties with the defendant.

The record shows that defendant then found fault with the plaintiff and her mother's presence in the home, and pursued a course of conduct which resulted in plaintiff being physically upset and emotionally disturbed to the point where she was under the care of a physician.

■ In passing upon this point it may be well to repeat the established rule that our review is a trial de novo on the record before us. We reach our own conclusions, but in doing so we defer to the trial judge who had the advantage of seeing and hearing the witnesses, when it appears from the record that the case is a close one resting chiefly on the credibility of the witnesses and the character of the parties as that might be displayed from the witness stand. Coggburn v. Coggburn, Mo.App., 256 S.W.2d 836.

Most of defendant's evidence was comprised of complaints about actions of persons other than plaintiff. He did testify, however, that on two occasions he requested plaintiff to procure medicine for him from the local drugstore. The first time plaintiff waited about four hours before obtaining the medicine, and the other time he got it himself. Further, he testified once plaintiff struck him in the face with her purse. On this subject plaintiff testified she didn't recall striking defendant but she did have a handbag on her shoulder at the time she was attempting to restrain defendant from taking Nancy, who had the croup, out into inclement weather without galoshes.

In the case of Bressie v. Bressie, Mo. App., 266 S.W.2d 24, 27, the court said:

"It is also contended that there was no proof that Bressie was the innocent and injured party. It is true that he struck defendant on the day of the separation, but he was apparently goaded to exasperation by her assertions that the marriage of twenty years was in fact a nullity and her further statement that she desired to be single. We have repeatedly held that the term 'innocent and injured party' does not mean a party without fault. Rowland v. Rowland, Mo.App., 227 S.W.2d 478, loc. cit. 484. In order to deny a divorce on this ground it must be shown that the party seeking relief was guilty of a continuing course of conduct manifesting dislike for the other party and an alienation and estrangement."

The evidence in this case fails to put the plaintiff within the rule enunciated in the Bressie case.

■ Defendant urges that plaintiff not only failed to prove the allegations of general indignities as set forth in her petition, but in effect admitted in her testimony that most of said allegations were false and untrue. In plaintiff's petition, among other allegations of indignities, defendant was charged with cursing the plaintiff in the presence of the children. Plaintiff's testimony was unmistakably that defendant never cursed her. Therefore, plaintiff failed to prove the allegation that defendant cursed her in the presence of their children; however, plaintiff's proof of oth-

er indignities was sufficient to warrant the court's action in granting plaintiff a divorce and custody of the children.

 The final charge of error by the defendant was that "wrangling" between husband and wife due to the lack of a conciliatory temper in both parties is not an "indignity" and does not entitle either party to a divorce under the divorce statute.

The record of proceedings in the lower court which is now before us for review fails to demonstrate a lack of a conciliatory temper on the part of plaintiff. On the contrary, it reveals that plaintiff refused to argue and quarrel with the defendant, but that defendant since the death of his father-in-law had continuously harassed the plaintiff about the presence of her mother in the home, although the mother-in-law's being there was necessary so that plaintiff could work and support the children and home. Further the evidence shows that defendant was less than diligent in seeking employment and there is no testimony he was unable to work after he was released from the hospital and particularly after the Veterans' Administration reviewed his status and reduced his disability rating and compensation. Defendant's own testimony demonstrates his ability to drive a car and to doing painting and general household repairs, so that he was at least physically able to do those things. The evidence further showed that defendant remained away from home at nights, unexplained to plaintiff. This evidence, if credible, was enough to warrant the court in granting the plaintiff a divorce if she was also adjudged to be the innocent and injured party. Coleman v. Coleman, Mo.App., 318 S.W.2d 378.

The judgment is affirmed.

WOLFE, P. J., and RUDDY, J., concur.