William E. SIMMONS, Respondent,

v.

Thelma Christian TRENTER, Appellant,

No. 22910.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1959.

M. E. Montgomery, Milan, for appellant.

R. M. Gifford, Green City, for respondent.

MAUGHMER, Commissioner.

We have here an action to modify a divorce decree with respect to child custody. Early in 1953, Thelma C. Simmons-Trenter, appellant, then 17 years of age, intermarried with William E. Simmons, respondent, who was then 40 years of age. John Lee Simmons, the child involved in this proceeding, was born April 25, 1954. On May 7, 1956, in the Circuit Court of Putnam County, appellant was granted a decree of divorce, and was awarded custody of the minor child, who has been with her ever since.

On April 15, 1958, respondent-father filed this motion to modify. Therein he alleged that the mother was neither a fit nor proper person to have care and custody. He alleged that he was able to provide a suitable and proper home, and prayed for a modified order awarding custody to him. The mother filed answer, denying the

charge of unfitness, asked dismissal of the motion and sought an allowance for attorney fee and child support.

After hearing testimony, the court sustained the motion for modification, found that neither the father nor the mother was a fit, suitable or proper person to have custody, awarded custody to a paternal aunt, who resides in the state of Iowa, and authorized removal of the child to that state. The decree included a judgment for $100 attorney fee to the mother.

On appeal appellant lists seven numbered points or assignments of error. Each of these numbered assignments is in reality a declaration of legal principle or conclusion of law. All can be encompassed and considered on appeal within an assertion that the decree is for the wrong party and constitutes an abuse of judicial discretion. There has been no appeal from the refusal of the trial court to grant an allowance of child support unless the statement under Point 7 that "It is a well-established duty that he has disregarded", be treated as such.

█ This being an equity case, we review the record de novo. We make this review with deference to the trial chancellor on irreconcilable, directly conflicting, verbal testimony on fact issues and his findings are usually sustained unless contrary to the overwhelming weight of the evidence. Creek v. Union Nat. Bank in Kansas City, Mo., 266 S.W.2d 737, 747; McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698, 703; Weakley v. Weakley, 355 Mo. 882, 198 S.W.2d 699, 702.

Three witnesses testified in support of the motion to modify. William E. Simmons, father, now 46 years old, is a part-time painter. He lives with his elderly parents in Unionville and estimated his earnings at $1,000 per year. He has been arrested on various occasions. The arrests came about apparently through intemperate use of alcohol. He stated that his wife was the mother of an illegitimate child at the time of their marriage; that she secured a divorce and custody of John Lee; that she continued to live in Unionville, but on occasions took the child out of the county, to St. Louis, to Kentucky, and to Iowa; that on various occasions she left the child with her sister and with her parents, who also lived in Unionville. He said that appellant married her present husband Robert Trenter, about three months before her third child was born; that shortly thereafter she and Trenter were divorced, but that after her fourth child was born, she remarried Trenter. Mr. Simmons admitted that he had contributed nothing toward the support of his child except that occasionally he would give him small sums of money when he saw him on the street and declared that he would not contribute to his support so long as the mother had custody. Except for one visit he has not seen the child since the divorce except when he would see him on the streets of Unionville. It was his testimony that he has seen the mother "around on the sidewalks and in the beer taverns" and that on numerous occasions her children have been left with her sister and parents, who were also neighbors.

Sheriff Beary of Putnam County testified that he had seen Mrs. Trenter "running around all hours of the night when I would be patrolling", and that she "used to" frequent taverns. He stated that Bob Trenter, her present husband, has a good reputation and is employed. The third witness for the movant husband was Mrs. Louise McDonald, the paternal aunt, who was awarded custody by the court. Mrs. McDonald is 35 years of age and resides on an 80 acre farm 4½ miles south of Knoxville, Iowa, with her husband and their 15 year old son. She says their home is modern, located on a gravel road, and that she and her husband are in good health. She stated that on one occasion she secured a job in a feed store located in Knoxville, Iowa, for her brother, and that the family moved up there, but stayed only a month and a half. It was her

version that appellant refused to stay in Iowa. Appellant says that her husband lost the job because he used liquor and refused to get up at 6:00 o'clock in the morning to perform his duties. Mrs. McDonald has not seen the child since the parents separated. She said that appellant would not speak to her, but that she was willing, ready and able to assume the care and responsibility of John Lee. It was her testimony that on one occasion at the behest of her brother, she paid a lawyer $100 to try to get the child away from its mother, and have it placed in a home somewhere. She expressed the opinion that neither her brother nor the mother of the boy was a proper person to be vested with his care and custody, although she did not know what kind of care the boy was receiving at the time of the trial. She knew nothing about Mr. Trenter, appellant's present husband. It was her testimony that she became involved in this particular hearing because her brother requested her to do so, and that she was paying part of the attorney fee. Her husband, Mr. McDonald, did not testify.

On behalf of the mother, Mr. Jim Payne, a grocer in Unionville, said that Mr. and Mrs. Bob Trenter were his customers; that they bought a lot of groceries in his store, paid their bills promptly, and that Mr. Trenter bore a good reputation. The transcript does not reveal the exact date of Mrs. Trenter's last marriage. This grocer, Payne, said the Trenters had been his customers since their last marriage, which he thought was six months or less prior to the trial. This is the closest approximation we have as to the date of appellant's last and presently existing marriage. Carl Cassidy, a resident of Unionville, occupation unrevealed, said he was acquainted with Bob Trenter and that he bore a good reputation; that he had seen the child John Lee many times; that he was a nice looking child and appeared to be healthy and pretty husky.

Mrs. Trenter said that she had cared for the child for the two years elapsing since her divorce; that until her marriage with Mr. Trenter she had received some public aid but none since her last marriage; that the family lived in a two-room house which her husband had built with the aid of their relatives. She said that her parents and her sister, Mrs. Tingley, lived close by and on occasions helped her by caring for the children. She said that her former husband may have given the boy ten or fifteen cents or maybe a half dollar on occasions when he saw him on the street, but other than that he had contributed nothing toward his support; that he never sent him any birthday or Christmas presents, and never bought him any clothes. She said her husband was regularly employed by the Ross Produce Company in Unionville; that he had worked there for nearly two years, earned from $40 to $50 per week and occasionally performed other odd jobs. She said Mr. Trenter was kind to and considerate of the children. She stated that she had frequently seen her former husband, Mr. Simmons, under the influence of liquor, and this was the underlying cause of their separation. Mrs. Trenter said that during the period of time elapsing between her divorce from Mr. Simmons and her marriage to Mr. Trenter, she belonged to a Lonely Hearts' Club and corresponded with and upon occasion met members of that group.

Robert Trenter testified that he was 35 years of age, grew up in Putnam County, had been employed by the Ross Produce Company for about two years, and that he made at least $50 per week. He said that he was fond of the child, John Lee; that he was welcome in their home; that he was willing to provide for his maintenance, and had never asked Mr. Simmons to contribute anything. He said that Mr. Simmons was welcome to come and visit the boy at any reasonable time so long as he was "good and sober." Mr. Trenter had one altercation with Mr. Simmons. Trenter said Simmons had been drinking and drew a knife on him. He stated that he did not have Simmons arrested, but "just worked him over."

An appellate court is not bound by the finding of the trial court but rather has the duty to review the evidence and render such judgment as is proper under the law and the evidence, but not lightly disturbing the finding of the trial judge. Watkins v. Watkins, Mo.App., 230 S.W.2d 778; Paxton v. Paxton, Mo.App., 319 S.W.2d 280, 287. "A parent's claim, other things being equal, to custody and control of his children is paramount to that of the grandparents or anyone except that of the other parent. Abel v. Ingram, 223 Mo.App. 1087, 24 S.W.2d 1048." Armstrong v. Armstrong, Mo.App., 185 S.W.2d 845, 847. Authority for modification is dependent upon proof of a change in condition and the burden of proving such change rests upon movant. Shapiro v. Shapiro, Mo.App., 238 S.W.2d 886, 889; Samland v. Samland, Mo.App., 277 S.W.2d 880, 881; Shilkett v. Shilkett, Mo.App., 285 S.W.2d 67, 68.

Generally speaking, it is against the policy of the law to permit a minor child of divorced parents to be removed to another jurisdiction unless it is clear that the child's own best interests will be better served by so doing. Baer v. Baer, Mo.App., 51 S.W.2d 873; Green v. Perr, Mo.App., 238 S.W.2d 924, 928.

In applying these legal principles to the evidence here we accord due deference to the findings of the trial judge on matters where there was conflicting testimony. And if such conflicts are completely resolved against the mother, what do we find? First of all, the father is unworthy of consideration as custodian. His sister says so and he does not claim otherwise. He uses liquor intemperately and lacks industry. He has shown no proper sense of responsibility for his child. Now as to the mother. She has given birth to two children out of wedlock. One was born when she was a teenage girl. She married her present husband, presumably the natural father of the other, some three months before its birth. The written record reveals that she has never

been in affluent circumstances and that she has had little education. However, aided by her sister, by her parents, and helped by dependent child aid, she kept her brood together during the period between her divorce from Simmons and her marriage to Trenter. There was evidence that she was around on the streets at all hours, and that she "used to" frequent taverns. Mrs. Trenter denied these charges, and as nearly as we can tell from the record these accusations had to do with her behavior prior to her last marriage.

During this unmarried period she met and corresponded with men whose acquaintances she made through a Lonely Hearts' Club. Her behavior prior to her first marriage when she bore an illegitimate child was not good, but thereafter the court granted her a divorce and awarded custody of her minor children to her. While we do not have the details it is apparent that an effort was made by Mr. Simmons and his sister Mrs. McDonald some time during 1957, to take John Lee away from his mother and "place him in a home." That effort failed and presumably it was this trial court that continued custody with her at that time.

We believe the evidence here shows that since her last marriage her behavior has improved. We think the child has a better and more stable home now than he had before this marriage, even though the family is in most modest circumstances. There is affirmative proof that the child, who has spent all of his five years with his mother, appears to be healthy and well fed. His stepfather is a sober and industrious man, who is willing to provide the child with support and maintenance.

We are fully aware of the known sense of justice which the trial judge has, but we must adhere to our firm convictions based upon the evidence. We are not residents of the local community and it could be that there are other impelling reasons for a change in custody. If so, counsel should have presented the evidence thereof. We think the testimony shows that Mrs.

Trenter is presently better able to properly care for her minor child than she was in 1956, when she was granted the divorce and awarded custody. We believe the changes since that time have been for the better and not for the worse. We believe the evidence here is not sufficient to justify divesting the mother of custody and placing such custody with a paternal aunt, who is comparatively a ·stranger to the child and who resides in a different state.

Therefore, that portion of that judgment and decree awarding custody of John Lee Simmons to Louise McDonald and authorizing her to remove the child to the state of Iowa is reversed and the court is directed to dismiss respondent's motion to modify and remand custody to appellant.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.