Dorothy E. IRVIN, Plaintiff-Appellant,

v.

Donald IRVIN, Defendant-Respondent.

No. 8070.

Springfield Court of Appeals.

Missouri.

May 5, 1962.

Cohn & Lentz, Waynesville, for plaintiff-appellant.

T. A. Shockley, Waynesville, for defendant-respondent.

RUARK, Presiding Justice.

This is an appeal by a plaintiff-mother from a judgment denying her motion to modify a divorce decree which gave custody of their minor son to the defendant-father.

The parties were married in 1956. At that time plaintiff had a girl child by a former marriage. The child here involved, Royce Wade, was born later that year. Apparently both plaintiff and defendant worked, and the defendant's mother kept Royce at least a part of the time. In June 1959 plaintiff left the defendant, taking Royce with her, and filed suit for divorce. In the interim before the hearing in the divorce suit she supported the child. Then she was hospitalized. Defendant filed a crossbill and on January 21, 1960, was granted a divorce and custody of Royce. At that time plaintiff was recovering from surgery, was not yet well enough to work, and did not appear at the hearing. A year later she married one Searle, a career soldier stationed at Fort Leonard Wood. The motion to modify now before us was filed on July 18, 1961. Royce was almost five years old at the time of the hearing on the motion in September 1961.

After the divorce, defendant took Royce to his parents' home near Dixon and was living with them there at the time of the present hearing. Admittedly these parents

are "good people." They live in a four-room frame house with a large porch and yard but without indoor plumbing. However, the grandparents expect to bring water into the house soon. One of the witnesses described it as "a modest American home," clean and well-kept. Defendant and his son share a bedroom. The grandparents are in their late fifties. The grandfather is employed in a shipping company warehouse.

The defendant receives a monthly disability pension because of injuries he incurred in the Korean war. With the child, the total is $90. He is employed by an automobile agency, where he is engaged in a three-year veteran's training program. At the time of trial he was being paid for this work $155 a month, with a prospect of increase in wages. Under the program he and the child are entitled to government-provided medical and dental care. He testified that he assists in caring for the child and does not go out more than three or four nights a month. His evidence is that the child is abundantly supplied with suitable clothing and toys, is taken to Sunday school "most of the time," and receives religious training at home.

Plaintiff, her present husband, and her six-year-old daughter by her first marriage live near Waynesville in a four-room rented house which is "modern." Plaintiff is not working. At the time of trial the husband had served more than eighteen and a half years in the Army and expected to retire when he has completed twenty years. He did not anticipate being given a foreign assignment. His retirement income would be $167 a month, and he planned or hoped to supplement this by work as a civil service employee at Fort Wood. He also has a child in another state by a previous marriage, whom he supports by allotment. He said he "very much" wanted Royce. If the petitioner had custody, Royce would receive free medical care at Fort Wood. The half-brother and sister are fond of each other, and when Royce is permitted to visit they play well together.

Plaintiff's evidence is that she takes Royce to her home for visits about twice a month, but defendant said she has on occasion not seen him for more than six weeks. Evidence on her behalf is that sometimes when she calls for him his clothes are ragged and a little dirty and that she almost always has to have his hair cut. Defendant's mother, on the other hand, asserts that the plaintiff keeps the good clothing the child wears on his visits to her and returns him in "rags." Plaintiff paid for polio shots and other immunization for the child and had two of his teeth removed because they were rotten. She first told the father he needed these services and he said he could get them done free but failed to do so, so she did it. The child needs other dental work which plaintiff had arranged to have done, but defendant would not let her take him after the motion to modify was filed. Hence this work was not done. There was also some evidence that on one occasion the father had Royce with him when he was drinking in a local tavern. Another time he left the child alone in the car ten or fifteen minutes while he went inside the tavern, and when he returned he was "staggering." On another occasion he was seen in a car with the child and another man and was drinking from a whisky bottle. Defendant denied he ever had Royce with him when he was drinking. With reference to the immunization, defendant said he did not know the child needed the shots. He and defendant's mother knew the teeth were decayed but said they were baby teeth and the child did not complain about them.

In this case the only question is whether there has been such a change of conditions as to require the modification of the judgment in respect to custody.

Under the evidence we think there is no doubt that there has been a change of condition. The plaintiff has apparently recovered her health, has remarried, and is not working. She has a suitable home and a husband who, very commendably, has expressed the desire to have the child in his home and help care for him.

■ But a simple change of condition is not, in and of itself, sufficient to justify a modification. The conditions so changed must, when taken with the whole circumstances, be such that the welfare of the child will be best promoted by the modification. Schumm v. Schumm, Mo.App., 223 S.W.2d 122, 126; Hurley v. Hurley, Mo. App., 284 S.W.2d 72(3); Cherry v. Cherry, Mo.App., 272 S.W.2d 700, 703; Wilson v. Wilson, Mo.App., 260 S.W.2d 770(8).

There are some circumstances which argue that the welfare of the child would be promoted by a modification. The most important of these we consider to be the fact that apparently neither the defendant nor the paternal grandmother has paid too much attention to the health of the child in regard to rotten teeth and immunization shots. Neglect of health of the child, whether it results from inattention, inadvertence, or ignorance, if continued, might in and of itself warrant an order depriving the father of further custody.

■ There is further the alleged fact that the father has indulged in drinking in the presence of the child and has taken such child into a tavern or left him to wait outside while he went in. This, however, is flatly denied by the father, and we must assume that the trial court, who had the witnesses before him, found this fact in favor of the father. Although we are bound to reach our own conclusions, in case of irreconcilable conflict of testimony, we give deference to the judgment of the trial court in respect to the credibility of witnesses who testified before him. Langshaw v. Langshaw, Mo.App., 331 S.W.2d 15, 18; Mitchell v. Mitchell, Mo.App., 319 S.W.2d 906, 908; White v. White, Mo.App., 312 S. W.2d 167, 169.

■ There is also the fact that the actual daily care of the child must necessarily fall on the paternal grandmother, as opposed to the natural mother, who wishes to take care of her child in her own home. And there is for consideration the fact that, with the mother, the child would have the advantage of growing up with his half-sister.

All the foregoing facts give us considerable concern. But there is another side to the picture. The child is with his grandmother, who seems to have had a goodly portion of the care of the child (because of a working mother) even before the divorce of the parents. This is "a good Christian home" and the child receives good moral training from the grandmother. We do not regard seriously the (disputed) testimony of the plaintiff that sometimes when she gets the child for visits he is dirty and ragged. It is not unusual for playing children to get dirty. Nor is the fact that a child of this age sometimes has ragged clothes too important. Although we might expect the mother to be concerned, history shows that many great Americans grew up in ragged clothes.

Although the mother has shown a change of conditions, the trial court could well have been doubtful as to whether the conditions in respect to the mother's home and support are yet permanent. The marriage to the present husband is recent and apparently it follows a recent divorce on his part. Without meaning in any way to disparage the present husband, his present position is uncertain. He will retire soon. He will draw a retirement pension, but that alone will not be sufficient to support a family of four in the present home and also to contribute to the support of a child by previous marriage outside the home. He has no *present* assurance of steady employment. Circumstances might require the change of domicile and the necessary disruption of the present home. The "conditions" under which plaintiff lives have not yet become fixed with any degree of certainty. The courts will not indulge in experiments with so important a trust as a child's welfare. Birrittieri v. Swanston, Mo.App., 311 S.W. 2d 364, 367; Stricklin v. Richters, Mo.App., 256 S.W.2d 53, 57.

■ The onus of proof was on the movant. Le Claire v. Le Claire, Mo.App.,

352 S.W.2d 379, 381; Hensley v. Lake, Mo. App., 274 S.W.2d 493, 495; Simmons v. Trenter, Mo.App., 327 S.W.2d 936, 939. And we do not "lightly disturb" the findings of the trial court. We defer to his judgment unless from a consideration of all the facts it appears that his findings are in conflict with a clear preponderance of the evidence. Noble v. Noble, Mo.App., 341 S.W. 2d 307, and cases cited at p. 310; Le Claire v. Le Claire, supra, 352 S.W.2d 379, 382. We do not find such conflict in this case, and for that reason the judgment is affirmed.

McDOWELL and STONE, JJ., concur.