**Dorothy K. ADKINS, Respondent,**

v.

**William L. ADKINS, Appellant.**

No. 22933.

Kansas City Court of Appeals.

Missouri.

June 1, 1959.

Richard P. Sprinkle, Sprinkle, Carter, Sprinkle & Larson, Kansas City, for appellant.

Richard E. Brown, Raytown, for respondent.

MAUGHMER, Commissioner.

Divorced wife's motion to modify alimony award was sustained. Judgment increasing such monthly payments from $1 to $100 was entered. The former husband has duly perfected an appeal.

Dorothy K. and William L. Adkins were married in 1934. On September 16, 1955, the wife was granted a default decree of divorce in the Circuit Court of Jackson County, Missouri, at Independence. She was given custody of the two minor sons Patrick and Michael, now 17 and 12 years of age. Mrs. Adkins was awarded alimony in the amount of $1 per month and $100 per month as child support. Defendant received the privilege of reasonable visitation with his sons.

At the time of the divorce decree Mr. Adkins worked as a journeyman painter. His earnings in 1955, based upon the evidence at the second hearing, were more than $100, but less than $150 per week— $125 weekly would total $540 per month. Mrs. Adkins, in 1955, was employed at Bendix Aviation. She earned $75 to $80 per week or some $345 monthly. If we deduct the alimony and child support payments from his earnings and add same to hers, their respective monthly incomes stand at $439 and $446. Neither has any additional sources of income.

It seems that Mr. Adkins was ill for a time in 1957 and did not keep up his payments. Mrs. Adkins refused on one occasion to accept his check for $230, which

he claimed would have brought his payments up to date. It is a fair statement from the evidence, we think, to say that defendant has fully paid the $101 per month, which he was obligated to pay and in addition: paid $4 per month additional alimony, he being under the impression the judgment was for $5 instead of $1; paid her an additional $25 per week for three or four months in the fall of 1957; paid the premiums on their sons' life insurance and during the six months prior to the modification hearing, bought $200 worth of clothing for the boys.

Mrs. Adkins testified that her expenses in 1955, ranged from $400 to $500 per month. She had prepared and there was received in evidence, compilations of her actual monthly expenses for January, February, March and April, 1958. These monthly expenditures varied from $468.15 to $532.80. Among the items listed for March and April were: $100 "payment on farm" and tractor battery, paint and refrigerator for farm. Further reference will be made to this farm.

Mrs. Adkins has continued to work as an electrical assembler. Her wages have increased from $80 per week in 1955 to $94 per week in 1958—which amounts to a monthly increase of from $345 to $407. Mrs. Adkins worked only eight months in 1957. She stated that she was "laid off" for one whole year during 1956–57. Mr. Adkins was ill and off work for a period during the same year. His earned compensation rose from $125 per week in 1955 to $141 per week in 1958,—monthly from $540 to $611. Again, deducting the alimony and child support payments from his earnings and adding them to hers, gives us totals of $510 and $508. At present he also receives an expense allowance of $50 per week.

Mrs. Adkins asserts that her health has deteriorated; that her legs swell when she remains seated for long periods at the work bench, and that on occasions she has stopped working because of such condition.

She consulted Dr. Walter H. Graham for the first time on March 4, 1958, just one month before filing the present petition. His bill for services to the date of trial was $32. He thought she needed an operation, which would cost $300. However, the patient, who is now 40 years of age, continued working. The former husband, too, is becoming older and he, too, was absent from work due to illness in 1957.

On November 1, 1957, Mrs. Adkins bought a 100 acre Kansas farm from her mother and stepfather for $6,000 and obligated herself to make payments thereon at the rate of $100 monthly. She included two such payments as a part of her itemized living expenses. She stated that because of her part time unemployment in 1957, she has been forced to expend some $1,200 in savings which she had accumulated at the time of the divorce.

Under this evidence the trial court decreed an increase in alimony from $1 to $100 monthly. Assuming both parties continue to work and at their current earnings, plaintiff's monthly income with the child support and increased alimony allowance would total $607, while defendant's would drop to $411.

Defendant-husband and appellant makes one assignment of error namely, that the court erred in sustaining the motion to modify because the judgment is against the law under the evidence, shows bias and prejudice, and is an abuse of judicial discretion.

■ This being an equity case, we review the record de novo. We make this review with deference to the findings of the trial chancellor on irreconcilable, directly conflicting, verbal testimony on fact issues and his findings are usually sustained unless contrary to the overwhelming weight of the evidence. Creek v. Union Nat. Bank in Kansas City, Mo., 266 S.W. 2d 737, 747; McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698, 703, 704; Weakley v.

Weakley, 355 Mo. 882, 198 S.W.2d 699, 702. To fully determine this appeal we must decide (1) Was there such a change in circumstances since the divorce as would justify modification of the alimony judgment, and (2) Did the increased alimony allowance amount to an abuse of judicial discretion?

■ Alimony is usually allowed to an "innocent and injured" wife where it is reasonable to do so. McCormack v. McCormack, Mo.App., 238 S.W.2d 858, 862, 863. Such an award is based upon the principle that it is the duty of the husband, in so far as he is able, to contribute such amount as will, supplemented by her earnings and other income, if any, enable her to maintain a standard of living measuring up to that existing at the time of the divorce. Harriman v. Harriman, Mo.App., 281 S.W.2d 566, 570. Almost, if not invariably, certain facts enter into determination if alimony is to be granted and if so, how much; the length of the marriage, the financial position of the parties, their respective ages, health, education and employment or business experience, their actual present incomes—earned and unearned—and whether there are minor children. Simon v. Simon, Mo., 248 S.W.2d 560, 568.

■ It is a firmly established legal principle that an alimony judgment, like any other judgment, is res judicata as to circumstances existing at the time of its rendition. Jourdan v. Jourdan, Mo.App., 251 S.W.2d 380, 382. Authority for modification is dependent upon proof of a change in condition and the burden of proving such change rests upon movant. Schulte v. Schulte, Mo., 140 S.W.2d 51; Shapiro v. Shapiro, Mo.App., 238 S.W.2d 886, 889; Samland v. Samland, Mo.App., 277 S.W.2d 880, 881; Shilkett v. Shilkett, Mo.App., 285 S.W.2d 67, 68.

In Bowers' "Judicial Discretion of Trial Courts", Sec. 12, page 20, we find the following definitions and descriptions of "Judicial Discretion" and "Abuse of Judicial Discretion": "The accepted understanding of the term does not necessarily, or very frequently, mean that any aspersions whatever are cast upon the trial court. Defining the two terms together, it may be said that judicial discretion is the option which the judge may exercise between the doing and the not doing of a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done; and that an abuse of discretion is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances. While it may amount to an axiom to say that difference in judicial opinion is not synonymous with abuse of judicial discretion, it yet remains true that the latter signifies that a ruling or decision has been made that is clearly untenable. * * * It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence".

■ Since the allowance of alimony originally requires the court to nicely balance current income between the needs of the wife and the ability of the husband to pay, manifestly a substantial change as to either element will authorize a redetermination. It does not follow that an increase in the husband's wealth or earning capacity alone justifies an increase in alimony. It is, however, an important element to be considered in exercising "judicial discretion" in equitably adjusting needs to income and station in life. The general rule as to alimony is stated in 27A C.J.S. Divorce § 233(6) p. 1057, as follows: "The age * * * and physical condition of the wife, including her life expectancy, should be considered. If from age and infirmity she is incapable of contributing to her own support, she should be provided for more liberally than if she were young and vigorous; and, conversely, if she is young and vigorous it is a circumstance tending to diminish the need for or the amount of alimony".

Applying the above legal principle to the factual evidence offered in support of this application to modify by increasing the alimony, has plaintiff proved a material change in circumstances or such a change as justifies the increase? First. From 1955 to 1958, plaintiff's monthly earnings increased from $345 to $407—defendant's from $540 to $611. We note these increases are approximately equal. Second. In 1955, plaintiff's monthly expenses, she says, were from $400 to $500 per month. For the first four months of 1958, based upon her own compilations, such expenses ranged from $468 to $532. The increase in her living expenses was, therefore, about the same as her increase in wages. Third. Mrs. Adkins' listed expenditures for March and April, included two $100 farm payments and, in addition, some minor farm expenditures. She says "I bought that farm for security for my boys and for myself, also". We know of no rule of law or equity which would authorize these investment farm purchase payments and expenses to be included as part of the wife's required living expenses or considered as showing a "change in circumstances" upon which a re-examination or upward revision of alimony could be based. Fourth. The two minor sons are now, of course, older, but neither is attending college. There was no effort to show an increase in their maintenance costs and, moreover, this proceeding is not one seeking an increase in child support allowances. Fifth. Mrs. Adkins maintains that she is not in good health; that her legs swell; that she is uncomfortable sitting at the work bench, and that she needs an operation. These assertions are material and if established to a degree which actually affected her ability to follow her substantially gainful employment or required the expenditure of substantial sums for medical and hospital care would authorize and justify re-examination of the alimony question. However, she is still working at the same job and with increased earnings. Based upon this record she first received medical attention for her illness just 30 days before filing her motion to modify. The medical bills to date total $32. Unless and until her capacity to work is impaired and her ability to earn and receive wages is materially lessened, or she is reasonably required to incur substantial medical and hospital bills, we believe her health deterioration does not amount to such a "change in condition" as to justify an increase in alimony. Mrs. Adkins is working and earning a substantial income. Any opinion or determination that a person cannot do what the evidence in truth and fact shows that she is doing, is, we think, transparently unjustified. Of course, both of these parties are growing older. As youth slips away, vigor and vitality ebb. As age advances, ailments and waning good health also arrive. This is true for defendant as well as for plaintiff. Mr. Adkins suffered a disabling illness in 1957.

We are inclined to defer to the findings of the trial court where the evidence is conflicting or does not heavily preponderate one way or the other. Lockhart v. Lockhart, Mo.App., 271 S.W.2d 208, 212, 213; Luckett v. Luckett, Mo.App., 263 S.W.2d 41, 44. However, as we view and review the evidence in this case, there is no material and vital conflict in the testimony and it is our duty to determine the right and justice of the matters in controversy. Coggburn v. Coggburn, Mo.App., 256 S.W.2d 836, 839. We are reluctant to differ with the trial judge who, with his known sense of justice, found as he did. However, we, too, must adhere to our firm convictions even though we thereby arrive at a different result.

Upon the record before us, which we have carefully studied and considered, we are of the opinion that there has been no "change of conditions" since 1955,

which either authorizes or justifies a re-opening, re-examination and re-determination at this time of the question of alimony. This being true, the increase in such award from $1 to $100 amounts to a "judicial abuse of discretion".

If the day comes when because of ill health, loss of earnings or for any other good reason, Mrs. Adkins is confronted with a real and injurious "change in conditions" and if Mr. Adkins is then in position to alleviate her distress, the Circuit Court can grant relief by modification of the original decree.

The judgment entered June 26, 1958, increasing the alimony from $1 to $100 per month, effective July 1, 1958, is reversed and the cause remanded with direction that plaintiff's motion to modify be dismissed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGH-MER, C., is adopted as the opinion of the Court. All concur.