Charles E. DODDS, Respondent,

v.

Wilma Ruth DODDS, Appellant.

No. 23453.

Kansas City Court of Appeals, Missouri.

Feb. 5, 1962.

See also 328 S.W.2d 724.

Jerome B. Stone, Goodman, Stone & Taxman, Kansas City, for appellant.

Clyde G. Meise, Kansas City, Albert Kiesow, Kansas City, Kan., for respondent.

CROSS, Judge.

This is an appeal from the trial court's judgment sustaining a divorced husband's motion to reduce an alimony award to his former wife.

The former husband, respondent Charles E. Dodds, filed the original divorce suit as plaintiff. The case was tried on November 23, 1947, and taken under advisement. On March 31, 1948, the trial court granted a divorce and $150.00 per month alimony to the defendant wife, Wilma Ruth Dodds, who is appellant here.

On January 13, 1961, the trial court sustained respondent's motion to modify the alimony judgment and ordered that appellant's monthly support allowance be reduced from $150.00 to $75.00. Appellant seeks our review of the judgment.

It is contended by appellant that respondent failed to prove that the circumstances and conditions of the parties had changed since the original judgment, and that, therefore, the trial court abused its discretion when it modified the judgment and reduced the amount of her alimony. Respondent insists that he has shown such change in circumstances and conditions sufficient to justify the modification—in that his earnings and earning ability have been materially reduced since the divorce was granted.

■ It is fundamental that a judgment for alimony, like any other judgment, is res judicata as to all facts and conditions bearing upon the award and existing at the time of its rendition as shown by the evidence, and that authority for its modification depends upon proof of a subsequent change in conditions. See Shilkett v. Shilkett, Mo. App., 285 S.W.2d 67, and cases cited. The burden of showing such change rests upon the party moving for modification of the judgment. Adkins v. Adkins, Mo.App., 325 S.W.2d 364; Schulte v. Schulte, Mo. Sup., 140 S.W.2d 51. Under these principles we proceed to review the record before us de novo and determine the disputed issues.

There is virtually no conflict in the evidence, all of which was introduced by respondent. It is shown that the parties were married in 1925. Mrs. Dodds was then 21 years old. Three children were born of the marriage—a son and twin daughters. The son is presently 30 years of age. The twin girls died at infancy under tragic circumstances. Since that time, appellant has been "very ill and under nervous

strain" and "has been in and out of hospitals". She was first sent to the Major Neurological Clinic. Respondent next had her confined in General Hospital for observation. He also had her confined in St. Joseph State Hospital No. 2 for the same purpose. When she was released from that institution, respondent didn't call for her. Instead, a niece of Mrs. Dodds went there and received her. She went to California to live with and be cared for by her niece. It appears that respondent filed his divorce suit while appellant was in California. He testified, "I don't know where she was at, I guess she was in California". Since the divorce, appellant has been living alone in a "cheap" hotel in Chicago. Her brother and his wife live in that city. Respondent resides and owns his own home in Kansas City, Kansas. He remarried about five years after the divorce was granted. He is an employee of the A. Y. McDonald Manufacturing Company, and was so employed for the past forty-two years.

The only evidence touching respondent's earnings and financial condition is his own testimony at the motion hearing on January 13, 1961. · Claiming that his then present income was considerably less than it was when the divorce case was tried, respondent testified on direct examination that his annual earnings from 1947 through 1960, inclusive, were as follows:

| | | | |
|------|------------|------|------------|
| 1947 | $20,075.00 | 1954 | $15,781.86 |
| 1948 | 23,278.24  | 1955 | 15,771.73  |
| 1949 | 24,407.91  | 1956 | 13,219.50  |
| 1950 | 20,150.00  | 1957 | 11,800.00  |
| 1951 | 28,858.94  | 1958 | 8,869.33   |
| 1952 | 23,897.73  | 1959 | 7,866.26   |
| 1952 | 22,089.22  | 1960 | 8,711.72   |

The foregoing schedule contains only one of the two factors necessary for our comparison—respondent's income for 1960 in the amount of $8711.72. We regard that figure as the proper index of his "present" income because it derives from the last complete year immediately preceding the hearing.

Absent from the schedule is respondent's income for the critical year of 1946—the last complete income year next preceding the divorce hearing in 1947. However, that figure was separately shown by respondent's testimony. On cross examination he admitted that he testified at the divorce trial (on November 23, 1947) that his total gross income for 1946 was $11,000.-00—subject to taxes of $2340.00—a net income of $8650.00.

Relative to his 1947 income—respondent admitted testifying in the divorce case that his employer's gross business for the then current and unexpired year of 1947 would be only 60 per cent of its volume in 1946—from which the court could only infer that respondent's 1947 income would be some 40 per cent less than his 1946 income. There was no evidence before the judge who made the award of alimony that respondent's 1947 income was, or would be $20,750.00. That figure appeared for the first time in the proceeding now under review.

It is apparent from the whole record that the only evidence before the court trying the divorce case on November 23, 1947, to establish respondent's total annual income *for a complete year,* was that he earned a net sum of $8650.00 in 1946.

Our problem has been reduced to this question: Has respondent proved that he suffered a reduction in earnings and a worsening of his financial condition by showing (1) that his income was $8650.00 (for 1946) when the divorce case was tried and (2) that his "present" income (for 1960) was $8711.42? The question would provide its own answer if it were true and had been shown by evidence that the $8711.42 income for 1960 was net, after taxes. There is no evidence in the record to show whether the stated figure was gross or net income.

If we were to indulge in the assumption that the 1960 earnings were gross, then we would have for comparison (1) the gross earnings of $11,000.00 for 1946 and (2) the gross earnings of $8711.72 for 1960. The latter sum is the lesser by $2288.28. Even if

so, under the present assumption, we believe that in 1960 respondent was in such financial circumstances that his personally useable and enjoyable income after the payment of alimony was then greater than it was in 1946 for reasons here noted.

When the divorce case was tried, respondent was expending $200.00 per month for the support and education of his son—then 17 years old. That son is now an adult over thirty years of age. Respondent no longer contributes to his needs. Respondent now takes allowable income tax deductions on account of and equal to his present payment of alimony. As a result, his tax burden is substantially reduced and his personally enjoyable income is augmented. The evidence shows that respondent's net worth has increased. At the time of the divorce trial his principal assets were: government bonds approximating $600.00; corporate stock worth approximately $37.50; $2000.00 in a checking account; and, an undivided interest in a $7000.00 home worth $3500.00—totally $6137.00. He presently owns an unmortgaged home worth between $11,000.00 and $13,000.00. These enumerated factors indicate that respondent's ability to pay alimony in the amount of $150.00 per month without personal hardship has not diminished, but on the contrary has improved.

■ We conclude that respondent has failed to show such change of conditions respecting his earning ability, income and financial worth as to warrant a reduction in appellant's alimony.

■ In making an award of alimony or determining the justice of its modification, there are elements to be considered other than the financial means of the husband. It is elementary that alimony should be adequate to meet the reasonable needs of the wife for sustenance, clothing, shelter and care due her in the station of life to which she had been accustomed and within the ability of the husband to provide. Seigfreid v. Seigfreid, Mo.App., 187 S.W.2d 768. In determining the amount of alimony that should be allowed a wife, the court should take into consideration her health, age, needs, earnings and her capacity to earn. Landreth v. Landreth, Mo.App., 326 S.W.2d 128. The age and physical condition of the wife have particular bearing. If from age and infirmity she is incapable of contributing to her own support, she should be provided for more liberally than if she were young and vigorous. See Adkins v. Adkins, Mo. App., 325 S.W.2d 364. Mindful of these principles, we now consider appellant's present condition and circumstances as shown by respondent's evidence—by depositions taken and introduced by him. We cannot compare appellant's present needs and living costs with those existing at the time she secured the divorce because there is no evidence to establish the latter standards.

When appellant married, she had no particular training for a job of any kind. During the years of her marriage she did no work except housework. When she went to Chicago after the divorce she worked for a while in a restaurant kitchen. She has not been employed in later years. She is now 56 years old and in poor health—mentally and physically. The testimony of a physician shows that she is suffering from hypertension and cerebral arteriosclerosis. The doctor stated, "More seriously she has a mental problem", "she is not responsive, lives in a shell, and is a reclusive type of patient". She is thin and bent forward by a spinal curvature, is depressed and uninterested in her surroundings, and appears to be at least 65 years old. She is not competent, either physically or mentally, to hold any kind of job—even menial.

The evidence discloses that appellant has no income, money or property of her own. She has been unable to subsist on her alimony without assistance from her brother who has contributed substantial sums to her support. Appellant pays $58.50 monthly rent for an "apartment" without sanitary facilities. She uses a "public" bathroom.

The cost of her food is $65.00 per month. It is shown that she requires $50.00 per

month for clothing, shoes and personal needs and $6.00 per month for insurance. The foregoing sums, totalling $179.50, include nothing for medical services. She presently needs medical, psychiatric and dental treatment but has no funds to secure it. She has no means to afford a television or other entertainment.

The undisputed evidence before us compels our finding that respondent has not shown any change of condition or circumstance affecting appellant, her needs or her cost of living that justifies any reduction of her alimony. In our opinion a sum less than $150.00 per month would not provide appellant the reasonably necessary means of subsistence to which she is entitled.

We make no comment on respondent's expenditures for his own living expenses, either formerly, presently, or comparatively, because there is no evidence on that subject.

Respondent urges that we defer to the decision of the trial court. We are aware of our duty to regard that court's findings with due deference where sharply conflicting evidence does not preponderate one, way or the other. However, the reason for the rule fails in large measure where, as here, there is no material conflict in the testimony—if any at all. In any event, it is our duty, upon this review de novo, to determine the right and justice of the matter in controversy. Shilkett v. Shilkett, Mo.App., 285 S.W.2d 67, and cases cited.

Because of our respect for the capable trial judge who heard this cause, we are reluctant to disturb his judgment. Notwithstanding, we cannot yield our firm convictions and violate the judicial trust reposed in this court. Since the result reached by the trial judge does not comport with our conscience, to which is addressed the final responsibility for a just determination, it is our bounden duty to so declare. Bassett v. Bassett, Mo.Sup., 280 S.W. 430; Campbell v. Campbell, Mo.App., 281 S.W.2d 314; Adkins v. Adkins, Mo.App., 325 S.W.2d 364.

We conclude that respondent has failed to establish any tenable ground or legally sufficient reason to support the judgment before us. In our opinion the reduction of appellant's monthly alimony from $150.00 to $75.00 is not justified by the evidence or in accordance with good equitable conscience.

We reverse the judgment entered January 13, 1961, modifying the original judgment, and remand the cause with direction that respondent's motion to modify that judgment be dismissed.

All concur.