**Diane Estelle CLISHAM, Plaintiff-Appellant,**

v.

**John Francis CLISHAM, Defendant-Respondent.**

**No. 34268.**

Missouri Court of Appeals, St. Louis District.

Oct. 3, 1972.

Ackerman, Schiller & Schwartz, Theodore F. Schwartz, Clayton, for plaintiff-appellant.

Volkmer & McKenzie, Harold L. Volkmer, Hannibal, James E. Godfrey, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

Plaintiff appeals from an order determining separate and conflicting motions for the modification of the alimony portion of a decree of divorce.

On April 9, 1968, plaintiff was granted a decree of divorce, and was awarded custody of two of the seven children of the parties, child support for the two, and alimony of $250.00 per month. Defendant was given custody of the other five children.

Between December, 1968 and March, 1971, defendant and plaintiff each filed motions for a modification of the decree respecting custody of the children, the allowance for their support, and the award of alimony. On March 26, 1971, the parties entered into and executed a written stipulation regarding that part of the decree as to custody of the children, visitation rights, and support during such periods of visitation, and both parties testified in support of their stipulation.[1] Thus the only issue which remained for trial was plaintiff's motion for an increase in the amount of her alimony, and defendant's motion for a decrease. The court on April 22, 1971, overruled plaintiff's motion, sustained that of defendant, and ordered plaintiff's alimony reduced to the amount of $125.00 per month. Plaintiff appeals from both the granting of defendant's motion and the denial of her own.

In accordance with Civil Rule 73.-01(d), V.A.M.R. we review the case upon both the law and the evidence as in suits of an equitable nature. And while we make our own findings of fact, that rule further provides that we are not to set aside the judgment unless it is clearly erroneous, and that due deference is to be given to the opportunity of the trial court to

judge of the credibility of the witnesses. Ruelas v. Ruelas, Mo.App., 455 S.W.2d 28.

In reviewing the record in this case in accordance with the foregoing principles the difficulty we encounter is in the paucity of the evidence concerning the conditions in existence at the time the decree of divorce was granted. The sketchiness of the evidence in that respect is pointed out by defendant in his brief, in which he states: " * * * There is evidence as to the amount required by the Plaintiff-Appellant to provide for her (present) needs but there is no evidence as to what her needs were in total at the time of the divorce. * * * " We agree, and add that there is a similar lack of evidence as to the income derived by the plaintiff at the time the decree was rendered, as will be noted. The scarcity of the evidence in the respects mentioned, and the apparent preoccupation of the parties in the development of the evidence regarding their present financial conditions, may have been attributable to the grounds upon which each sought modification of that part of the decree regarding alimony. In her motion plaintiff alleged that, "since the rendition of the decree, defendant is earning substantially more money, and that plaintiff is unable to support herself and requires an additional amount of alimony per month." On his part defendant pleaded, in his amended motion, that the plaintiff "* * * has been, since the date of the Divorce Decree, gainfully employed and has sufficient income to properly care for herself and her financial means are such that the alimony of $250.00 a month is greatly in excess of what the Plaintiff requires."

Defendant is a physician who specializes in urology. Plaintiff holds a Bachelor of Science degree in Nursing. We glean from the record that until 1966 the parties lived together in a three bedroom, two-story brick home owned by them, located in Hannibal, Missouri. Prior to that date

---

1. If the court entered an order modifying the decree in accordance with the stipulation it is not shown in the transcript before us.

plaintiff voluntarily worked three days a week as an in-service coordinator in St. Elizabeth's Hospital in Hannibal, for which she received $28.00 a day. In answer to the question as to when the parties separated plaintiff said that, "Well, I went away to the hospital" in October, 1966, but to which hospital or what she did was not developed. It was shown that on April 9, 1968, when the decree was granted to plaintiff, she was then going to graduate school at St. Louis University, and that she was working two days a week in the medical intensive care unit of St. Mary's Hospital in St. Louis. But there was no evidence as to her salary, and whether it was more or less than that she had received about a year and a half before, in another city, was not developed in the evidence. There is a gap in the evidence regarding her activities between April, 1968 and September, 1970. She stated that from September, 1970 until a short time before the hearing, held on March 26, 1971, she was in graduate school and was not employed, subsisting on her alimony of $250.00, a grant for living expenses (we infer from the University) of $250.00 per month, and, until December, 1970, the allowance for the support of the two children in her custody, which totaled $350.00 per month.

Plaintiff discontinued her studies and about a week prior to the hearing was held she secured full time employment as a nurse at Renard Hospital, the psychiatric hospital of the Barnes Hospital complex. She stated that she had received a check for $168.00 for one week's work, but that no deductions had been made therefrom for Blue Cross and Blue Shield, or for Metropolitan Insurance, and said that while her total salary would be $715.00 per month, her take-home pay, after all deductions, would be $550.00 per month. She made it clear that her full time employment was only temporary, and testified that she had applied for admission, and had been accepted, as a graduate student in the School of Sociology of Washington University, and that she would not be able to work while attending school; particular-ly when, as stipulated, she would have the children with her on a certain weekend. Her reason for her change in the Masters Degree she sought, she explained, was that it would complement her prior training in nursing, and would enable her to obtain more permanent employment and more security in the future.

The evidence showed that at the time of the divorce and from time to time subsequent thereto plaintiff had rented various apartments, usually consisting of a living room, two bedrooms and a kitchen, for which with utilities she paid about $200.00 per month. She stated, however, that on the infrequent occasions when she had had with her more than the two children of which she had been given custody an apartment of that size was inadequate. At the time of the hearing plaintiff was temporarily living, because of her financial condition, in a woman's residence hall provided by the Sisters of Mercy, where she shared a room with another lady, for which, including board, she paid $90.00 a month. She itemized her future monthly living expenses, including a larger apartment to accomodate the children when they would be with her, at $900.00 a month. Her only assets at the time of the hearing, she stated, was a bank account of $168.00 (apparently from her recent salary check), and a 1966 Chevrolet Impala two-door sedan, the value of which she estimated at $1,000.00.

As to defendant the evidence was that since the decree he continued to practice his specialty in Hannibal. He has since remarried, and he and his second wife live in a home he purchased for $34,500, the value of which he stated, had since declined to $28,000 or $30,000. His gross income in 1968, the year when the divorce was granted, was $57,799.00 and he estimated his gross income in 1970 as about $70,000.00 " * * * after all expenses but before deductions and so forth"; by deductions, he explained, he meant office expenses. Since 1963 he has annually paid $2500 into a retirement fund, which then

totaled about $30,000, under a currently tax exempt plan he referred to as the Keough Plan. In addition, at the time of the hearing, he owned 400 shares of Continental Oil stock currently worth $3.50 per share and 600 Selected Mutual Fund Shares worth $16.50 per share. He drove a 1968 Cutlass automobile, and in 1970 he purchased a used 1968 Cadillac, the title to both cars having been registered in his name and that of his present wife. Nancy, a daughter, is in the Epworth School, at a cost of $3,000 a year; Joanne, another daughter, is in St. Mary's Special School, which costs $1800 to $2000 a year; and John, the son, is in a nursing home, at a cost of $1800 to $2000 per year. For several years defendant has been contributing to a trust fund for the support of John after defendant's death, and the trust holds "several hundred" shares of Union Electric common stock and "200 shares of General Public(?) Savings and Loan Association * * *." He has also established a trust fund for Joanne, in which he has placed 4 shares of IBM stock.

While the legal principles regarding the granting of a decree of divorce and the awarding of alimony, as well as a subsequent effort to obtain a modification of the same, have long been established, the application of those principles in the light of the facts in a particular case frequently presents considerable difficulty. Differing from the ecclesiastical law, under the laws of this state marriage is not a sacrament but a contract, the decree of divorce discharges the contract for its breach by one of the parties, and if the husband is the guilty party alimony " * * * In this limited sense at least it may be deemed an assessment of damages in her (the wife's) favor for breach of the contract by the husband. * * *" Nelson v. Nelson, 282 Mo. 412, 221 S.W. 1066, 1069. However, despite the use of the word "shall" in § 452.070, RSMo 1969, V.

A.M.S.,[1] three decades ago our Supreme Court held, in Smith v. Smith, 350 Mo. 104, 164 S.W.2d 921, 924, that when a wife was granted a divorce it was not mandatory upon the court to award her alimony, and that " * * * An order for alimony may be granted or refused according to the particular facts of each case * * *." It has also been said that, "It would seem impossible to specify the various factors to be considered in determining the amount of permanent alimony to be awarded an innocent and injured wife in all cases. * * *" Brinker v. Brinker, 360 Mo. 212, 227 S.W.2d 724, 726, but among those factors frequently mentioned in opinions, one, but only one, is the means and financial conditions of the wife. Knebel v. Knebel, Mo.App., 189 S.W.2d 464. Thus the determination of the allowance of alimony "requires the court to nicely balance current income between the needs of the wife and the ability of the husband to pay * * *" Adkins v. Adkins, Mo.App., 325 S.W.2d 364, 367, requiring the exercise of judgment denominated "judicial discretion."

Cognizant of the fact that the factors taken into account when an allowance of alimony was made may materially alter with the passage of time our legislature has wisely provided, in § 452.070, that, " * * * The court, on the application of either party, may make such alteration, from time to time, as to the allowance of alimony and maintenance, as may be proper, * * *." The statute does not specify the nature of a change of circumstances which will justify a modification of the decree of divorce, but as this court recently pointed out in Ruelas v. Ruelas, Mo.App., 455 S.W.2d 28, the modification of a judgment for alimony is dependent on a change in the circumstances of the parties between the time the judgment was entered and the time the motion for modification was filed, and the party seeking the change bears the burden of showing such a change as will

---

1. "When a divorce shall be adjudged, the court shall make such order touching the alimony and maintenance of the wife, * * * as, from the circumstances of the parties and the nature of the case, shall be reasonable, * *."

justify the modification sought. Not every change of circumstances will justify a modification. For example, the law does not recognize a divorced husband's remarriage as a ground for decreasing the amount of alimony awarded the first wife, but it may be taken into consideration if children are born of the second marriage. Jourdan v. Jourdan, Mo.App., 251 S.W.2d 380; Shapiro v. Shapiro, Mo.App., 238 S.W.2d 886. And an increase in a husband's wealth and earning capacity, standing alone, does not justify an increase in a wife's alimony. Harriman v. Harriman, Mo.App., 281 S.W.2d 566, but such a change may be taken into account if it is first determined that there has been such a change in the wife's condition as will justify an increase in alimony payments to the wife. Lane v. Lane, Mo.App., 439 S.W.2d 550. A material decrease in a husband's ability to pay, together with a material increase in a wife's earning capacity, has been held to furnish sufficient grounds for a reduction of alimony, Landreth v. Landreth, Mo.App., 326 S.W.2d 128, but recently this court declined to sustain a husband's efforts to effect a reduction of the alimony although the wife's salary in the interim had increased 47 percent. Ruelas v. Ruelas, supra. In short, the determination of whether the decree regarding alimony should be modified so as to increase or decrease the amount requires the same exercise of judicial discretion as that involved in its original allowance. Adkins v. Adkins, supra; Dodds v. Dodds, Mo.App., 353 S.W.2d 810.

■ After a careful review of the record and a thorough consideration of the issues presented by the parties' respective motions we have reached the conclusion neither party sustained his burden of showing such a material change of condition as would justify a modification of the original decree. It is true, as plaintiff alleged in her motion, that defendant's income has substantially increased, but, as we have pointed out, that fact, standing alone, is not a sufficient ground for increasing her amount of alimony, although it may be taken into consideration in connection with that part of her motion in which she alleges that she is unable to support herself and requires an additional amount of money. Thus in essence the problem here presented devolves into a question of the amount of money needed by plaintiff to support herself, taking into account her own means.

The problem presented in this case is complicated by the fact that the amount of alimony awarded to plaintiff by the original decree, together with her own meager earnings, was not sufficient to support herself. And in view of the defendant's income at the time, judged by any reasonable standard it could scarcely be said to have been overly generous. In fact, it was only slightly more than the presently tax free contribution of $2500 defendant makes each year to his retirement fund. By the original decree plaintiff was awarded custody of two of the children which, of course, necessitated the establishment of a suitable home for them. She seemingly managed to do so with her alimony, the allowance for their support, the university's grant to her and whatever she was able to earn.

In one respect there was at least a temporary change of plaintiff's condition shown, in that at the time of the hearing on the motions plaintiff was fully employed at a take-home salary of $550.00 per month. But her uncontradicted testimony was that such employment was only temporary, pending the continuance of her education in the Fall at Washington University, when she would be unable to work. However, there is another counter-balancing change of condition in the circumstances of the parties, to be taken into account even if plaintiff continues her employment at the salary mentioned. Under the stipulation as to custody of the children plaintiff is to have temporary custody of all of the children, except those that may be institutionalized, on the first weekend

of each month from after school on Friday until 7:00 P.M. on Sunday, for two weeks in June and two weeks in August, and on alternate Thanksgiving and Christmas Holidays. Since three of the children are in institutions, she will thus have temporary custody of four, instead of two, as heretofore. It is obvious that in order for plaintiff and her children to obtain those benefits of continued association so frequently referred to by the courts when parents are divorced, plaintiff will be required to provide and maintain a larger and undoubtedly more costly apartment than the one rented when she had custody of only two of the children. We have not overlooked the provision under the stipulation that defendant is to contribute $30.00 per weekend for the support of all of the children, and $45.00 per week for each child during the two-week periods mentioned, but it must be borne in mind that suitable accommodations for the children cannot be engaged for only such limited and sporadic periods, and that it will be necessary for her to provide and pay for proper quarters for the children on a permanent and more expensive basis. Thus, even if she continues to earn a salary of $550.00 per month that amount, together with her alimony of $250.00 per month and the allowance for child support, cannot reasonably be said to be "greatly in excess of what the Plaintiff requires," as alleged by defendant.

We are aware that it has been repeatedly said that we should not interfere with the findings and conclusions of the trial judge unless there has been a manifest abuse of judicial discretion. Ruelas v. Ruelas, supra. By the use of the terms "abuse of discretion," which in essence means " ' * * * the option which the judge may exercise between the doing and the not doing of a thing, * * * ' ", Harriman v. Harriman, supra, no aspersion is cast upon the trial court. Because of our respect for the capable trial judge who heard this cause, we are reluctant to disturb his judgment. But this court is likewise under the duty to exercise its judicial discretion, and when the judgment reviewed does not comport with the dictates of our conscience, to which is addressed the final responsibility for what in our opinion is a just determination, it is our bounden duty to so declare. Dodds v. Dodds, supra; Harriman v. Harriman, supra.

That part of the judgment entered April 22, 1971 overruling plaintiff's motion to modify the original decree of divorce by increasing the amount of alimony is sustained; and that part of the judgment entered on April 22, 1971, sustaining defendant's motion to modify and reducing plaintiff's alimony to $125.00 is reversed, and the cause is remanded with the direction that defendant's motion to modify the original decree be dismissed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this Court.

Accordingly, judgment of April 22, 1971, overruling plaintiff's motion to modify original decree of divorce by increasing alimony sustained; that part sustaining defendant's motion to modify and reducing plaintiff's alimony reversed, and cause remanded with direction that defendant's motion to modify original decree be dismissed.

BRADY, C. J., and WEIER, CLEMENS and KELLY, JJ., concur.